PARKTON ASSOCIATION, Respondent,

v.

Robert ARMSTRONG, d/b/a Armstrong
Investment and Boatmen's National
Bank of St. Louis, Appellants.

No. 63668.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 10, 1994.

Rehearing Denied June 6, 1994.

Herbert K. Hoffman, Clayton, for appellants.

Dana Hockensmith, Stanford M. Bjurstrom, Weier, Hockensmith & Sherby, P.C., St. Louis, for respondent.

AHRENS, Judge.

This appeal involves the development of a tract of land in Jefferson County. Defendant Robert Armstrong, d/b/a Armstrong Development, (Armstrong) appeals the trial court's order and decree in favor of Plaintiff, Parkton Association.[1] We affirm in part and reverse in part.

Russell Emmenegger and Bohemian Savings and Loan Association (Bohemian) formed a joint venture known as Parkton Development to develop a 937 acre tract of land as a planned community. In 1975, Parkton Development recorded a Declaration and Indenture of Covenants, Restrictions, Conditions, and Estoppel (covenants). In addition, they hired an architect and a planner to recommend alternative plans for the development of the land. This development became Parkton Subdivision.

Parkton Development built and sold homes in Parkton Subdivision for several years. In 1982, Parkton Development conveyed the remaining unsold land by deed to Illini Construction Company. In 1983, the unsold portions of Parkton Subdivision were conveyed by trustee's deed to Bohemian by John O'Brien, as successor trustee for Illini Construction Company. In 1988, the Federal Deposit Insurance Corporation (FDIC), acting as a receiver for Bohemian, recorded six plats covering the undeveloped portion of Parkton Subdivision. Then, in 1990, the FDIC, acting as a receiver for Bohemian, conveyed by quit-claim deed the remaining unsold land in Parkton Subdivision to Armstrong.

When Parkton Subdivision was first being developed, it was marketed as a planned community. Prospective homeowners were given a brochure which stated the developer's intent to create a community with controlled development and ample common ground set aside for recreational use. They were shown maps detailing the current phases of development and could see proposed plans for future development upon request.

Homeowners who purchased lots in the subdivision were given a copy of the covenants pertaining to the subdivision. Among other things, the covenants provided for common ground to be set aside for recreational use. The covenants stated that title to all areas set aside as common ground was to be conveyed to Parkton Association, a not-for-profit corporation established for the benefit of the homeowners. Areas set aside as common ground were surveyed in 1986 for the purpose of developing legal descriptions so they could be conveyed to Parkton Association.

This action began when Armstrong refused to convey title to five or six areas set aside as common ground to Parkton Association. In an amended answer, Armstrong agreed to convey title to all areas except a piece of property used by the homeowners as a ballfield. The trial court considered the ballfield to be common ground and ordered Armstrong to convey title to Parkton Association. The designation of the ballfield as common ground is one of the issues raised by Armstrong in this appeal.

We note at the outset that Parkton Association filed a motion to dismiss the appeal for failure to comply with Rule 84.04. Armstrong raises three points on appeal:

I. THE TRIAL COURT ERRED IN INTERPRETING THE INDENTURE AND COVENANTS OF PARKTON AND HOLDING THAT APPELLANT DOES NOT STAND IN THE SHOES OF THE ORIGINAL GRANTOR SUBJECT TO THE SAME RIGHTS, PRIVILEGES, LIABILITIES, DUTIES AND RESPONSIBILITIES OF THE ORIGINAL GRANTOR AND THAT THE RIGHTS OF THE

---

1. Defendant Boatmen's National Bank of St. Louis does not appeal the judgment.

ORIGINAL GRANTOR HAVE EXPIRED AND THE COURT FURTHER ERRED IN INTERPRETING SAID INDENTURES TO THE EFFECT THAT THE EXISTING DEVELOPED RESIDENTIAL LOTS OF PARKTON AND AREAS CONSENTED TO BE COMMON GROUND ARE SEPARATE AND DISTINCT FROM THE ORIGINAL 937 ACRE TRACT THAT WAS PART OF THE ORIGINAL "PLANNED COMMUNITY".

II. THE COURT ERRED IN EXCLUDING THE TESTIMONY OF RON EMMENEGGER, PRINCIPAL IN PARKTON DEVELOPMENT, THE ORIGINAL DEVELOPER, TO THE EFFECT THAT THE GRANTOR INTENDED BY THE GRANTOR AND COVENANTS THAT THE APPELLANT STAND IN THE SHOES OF THE ORIGINAL GRANTOR WITH ALL THE SAME RIGHTS, PRIVILEGES, LIABILITIES AND RESPONSIBILITIES OF THE ORIGINAL GRANTOR AND THAT PARKTON WAS TO BE DEVELOPED AS AN ENTIRE PLANNED COMMUNITY AND THAT NO ONE AREA WAS TO BE SEPARATE AND DISTINCT FROM THE ENTIRE PLANNED COMMUNITY.

III. THE COURT ERRED IN DECLARING THE "BALL FIELD" TO BE PART OF THE COMMON GROUND TO BE CONVEYED TO RESPONDENT BY THE APPELLANT.

■ Points relied on in a brief should state: "briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." Rule 84.04(d). Armstrong's points fail to comply with Rule 84.04(d) in that they fail to state "wherein and why" the actions of the trial court are claimed to be erroneous. *Thummel v. King*, 570 S.W.2d 679, 684–85 (Mo. banc 1978). Merely stating in a brief on appeal what the alleged errors of the trial court are, without stating why they are errors, does not satisfy Rule 84.04(d) and does not preserve any question for review. However, in lieu of dismissing this appeal, we will review *ex gratia* the argument portion of Armstrong's brief to determine if there was plain error which would permit relief under Rule 84.13(c). *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 335 (Mo.App.1991). As such, the order and decree of the trial court will only be reversed if there is manifest injustice or a miscarriage of justice has occurred. Rule 84.13(c).

Armstrong states in his first point relied on that the trial court erred in holding that (1) appellant does not stand in the shoes of the grantor; (2) the rights of the grantor have expired; and (3) the existing developed portions of Parkton Subdivision are separate and distinct from the original 937 acre tract. Armstrong argues that as the owner and developer of the remaining undeveloped portion of the 937 acre tract, with the exception of a few parcels of land sold to independent developers, he has all the rights and obligations of the grantors as specified in the covenants. We believe the gist of Armstrong's argument is that the trial court's order prevents him from developing the remaining portions of the 937 acre tract with the freedom and discretion afforded the original developer.

The trial court issued detailed findings of fact and conclusions of law. We are uncertain from the point relied on and from the argument exactly which portion Armstrong challenges. After a thorough reading of the findings of facts and conclusions of law, we note that its effect is two-fold. First, the court determined that the area of land used as a ballfield was common ground and ordered it to be conveyed to Parkton Association. This issue is dealt with in our discussion of Armstrong's third point relied on. Second, the trial court found that plats recorded by the FDIC as receiver in 1988 were invalid.

■ The Parkton Subdivision covenants include provisions concerning additions to and deletions from the 937 acre tract, amendments to the covenants, and the effective term of the covenants. No evidence was presented indicating any deletions from the 937 acre tract nor was evidence presented concerning the amending or termination of the covenants. The covenants run with the

land and still cover the entire 937 acre tract. Armstrong, as a subsequent purchaser, was on notice of the covenants as recorded. *Connelly v. Schafer,* 837 S.W.2d 344, 346 (Mo. App.1992). As owner of property covered by the covenants, he is entitled to its benefits and is bound by its burdens. *Gibbs v. Cass,* 431 S.W.2d 662, 669 (Mo.App.1968).

■ Parkton Development stated in the covenants that they planned to develop Parkton Subdivision as a planned community. In doing so, they incorporated proposed development plans as exhibit B into the covenants. Prospective purchasers interested in reviewing the proposed development plans were shown a book containing the four master plan alternatives recommended by the architect and planner. These plans were presented to the trial court and are in the record on appeal as plaintiff's exhibit 2. In addition, Parkton Development promoted Parkton Subdivision as a planned community in its brochure given to prospective purchasers. At trial, a homeowner testified that he relied on the master plans and the planned community concept when he purchased his lot in Parkton Subdivision.

As noted in our recitation of the facts, Parkton Development transferred its interest in unsold portions of Parkton Subdivision to Illini Construction Company. Later, the unsold portions were conveyed by trustee's deed to Bohemian. In 1988, the FDIC, acting as a receiver for Bohemian, recorded six plats covering the undeveloped portion of Parkton Subdivision. These plats are named the Colorado addition, the Montana addition, the Meadow Drive addition, the Nevada addition, the Wyoming addition, and the Utah addition and were presented to the trial court and included in the record on appeal as plaintiff's exhibits 12–17. The trial court found that these plats varied significantly from the common scheme represented to purchasers by Parkton Development.

We agree. Ron Emmenegger testified that Parkton Subdivision was developed according to the recommendations of the architect and planner who created the alternate master plans. He further testified that development followed the third recommended plan most closely. According to our inter-

pretation of the third recommended master plan as presented in plaintiff's exhibit 2, the area of land platted by the FDIC in 1988 was originally intended to be developed into approximately three acre (130,680 square feet) lots. The lots as platted by the FDIC average 8000 to 9000 square feet. We also note that the number of lots in the 1988 plats is more than twice the number of lots originally planned. This is a significant increase in development and could place unexpected strains on roadways, utilities, services and common grounds. Upon reviewing the plats recorded by the FDIC, we note that the plats do not incorporate the covenants which are binding on the land. In addition, we note that the common grounds are dedicated to several utility companies and Jefferson County authority. This is contrary to the covenants which state that Parkton Association shall hold title to common grounds for the benefit of Parkton Subdivision homeowners. These are significant variances from the master plan concept referred to in the covenants and relied upon by Parkton Subdivision homeowners. The trial court did not plainly err in invalidating the 1988 plats in that they varied significantly from the common scheme represented to Parkton Subdivision homeowners.

■ However, to the extent that the trial court's order and decree interprets the covenants as restricting all future development in Parkton Subdivision, it is erroneous. The law does not favor restrictions on the free use of land. *Schneider v. Forsythe Group, Inc.,* 782 S.W.2d 139, 143 (Mo.App.1989).

■ Armstrong claims in his second point relied on that the trial court erred in excluding the testimony of Ron Emmenegger regarding the intended meaning of the covenants. This evidence was included in the record on appeal through an offer of proof.

■ It is well established that courts should interpret covenants so as to give effect to the intent expressed by the plain language. *Blevins v. Barry–Lawrence County Ass'n.,* 707 S.W.2d 407, 408 (Mo. 1986). Parole evidence attempting to establish the intent of the parties to a covenant is neither binding as a matter of law nor usual-

ly admissible. *Id.* Parole evidence cannot be used to vary or contradict the terms of an unambiguous and complete written instrument. *Bergmann v. Bergmann,* 740 S.W.2d 215, 216 (Mo.App.1987). The language of the covenants before the trial court was clear. The intent of the parties can be determined from the plain language. The trial court did not plainly err in excluding Ron Emmenegger's testimony regarding the intended meaning of the covenants.

Armstrong's final point challenges the trial court's order requiring him to convey the ballfield to Parkton Association. Armstrong claims the trial court erred in declaring the ballfield as common ground in that the covenants do not specifically designate property to be set aside as common ground and this finding exceeds any plain and ordinary interpretation of its provisions. Armstrong further challenges the trial court's finding that Parkton Association acquired rights to the ballfield through adverse possession because the issue was not raised in the pleadings and not tried by the parties. Finally, Armstrong claims the ballfield does not have a legal description and, thus, there could be no enforceable agreement to transfer the property.

The covenants state that all recreational facilities developed by grantors and all common grounds are to be transferred to Parkton Association. In addition, a brochure given to all prospective purchasers stated that Parkton Subdivision would be developed with ample common ground and areas set aside for recreational facilities. A legal description of the ballfield was developed under the direction of Parkton Association and Bohemian, Armstrong's predecessor in title, with the intention to convey the property as provided in the covenants. The legal description was presented to the trial court as plaintiff's exhibit 18 and is included in our record on appeal. Armstrong did not present any evidence indicating why the ballfield should not be considered common ground or a recreational facility. The trial court did not plainly err in ordering the ballfield to be conveyed to Parkton Association as intended in the covenants.

In addition, the trial court found that Parkton Association acquired rights in the ballfield through adverse possession. Although this issue was not raised in the pleadings, it was tried by express or implied consent and was properly before the trial court. Rule 55.33(b). A party acquires rights in a property when it proves by a preponderance of the evidence possession which was (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for a period of ten years. *Witt v. Miller,* 845 S.W.2d 665, 667 (Mo.App.1993) Evidence in the record shows that Parkton Association has exercised all the rights demonstrative of ownership since 1977. Testimony revealed that the ballfield was used exclusively by homeowners as a recreational facility and that they believed they had a right to use the property because it was considered common ground. In addition, Parkton Association maintains the property and insures the facilities. The trial court did not plainly err in finding that Parkton Association had acquired rights in the ballfield through adverse possession and ordering Armstrong to convey title.

We affirm the trial court's order and decree to the extent that it (1) finds title to common ground quieted in Parkton Association, (2) finds the 1988 plats recorded by FDIC invalid, (3) prohibits development or improvement of lots described in the 1988 plats, and (4) taxes costs to the defendants. The trial court is instructed to amend its order and decree to recognize that Armstrong is bound by any burdens and is entitled to any benefits contained in the covenants which run with the land. This includes the right to subdivide, develop, and improve his property consistent with the covenants. We interpret the covenants to incorporate a development plan consistent with the third recommended master plan as presented in plaintiff's exhibit 2 and as relied upon by Parkton Subdivision homeowners.

The order and decree of the trial court is affirmed in part and reversed in part and the cause is remanded with instructions to enter an order consistent with this opinion.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.