**Sam F. HAMRA, Jr., Plaintiff–Appellant,**

**v.**

**MAGNA GROUP, INC., Defendant–Respondent.**

**No. 21152.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 8, 1997.

C. Ronald Baird, Timothy M. McDuffey, Baird, Lightner & Millsap, P.C., Springfield, for Plaintiff–Appellant.

Michael J. Morris, Jeffrey R. Fink, Thompson Coburn, St. Louis, for Defendant–Respondent.

Before PARRISH, P.J., and SHRUM and BARNEY, JJ.

PER CURIAM.

Sam F. Hamra (sometimes hereafter referred to as appellant) appeals a summary judgment on claims for breach of contract (Count I), promissory estoppel (Count II), and negligent misrepresentation (Count III). This court affirms.

Landmark Bancshares Corporation (Landmark) was a St. Louis, Missouri, holding company. In 1981 Landmark had a number of subsidiary banking corporations located throughout Missouri. Mr. Hamra became a member of the board of directors of the Springfield, Missouri, subsidiary. A short time later he became a member of the board of directors of the parent company. He served as a member of both boards until 1991.

Landmark established a deferred compensation plan for board members in 1985. The plan was designated "Landmark Bancshares Corporation Deferred Director Fee Plan" (hereafter sometimes referred to as "the plan"). A life insurance agent, Jim Blair III, was engaged to market the plan to individual board members. He performed his task by presenting the plan to each board member and explaining its consequences based on the board member's personal circumstances.

Mr. Blair met with Mr. Hamra. He presented the plan to Mr. Hamra and Mr. Hamra's accountant, Randall G. Allen. Mr. Hamra also discussed the plan with other Landmark officers. In order to participate in the plan, a director was required to execute an individual participation agreement. Mr. Hamra executed a participation agreement March 15, 1985. Paul Gerson, senior vice president and treasurer of Landmark, executed the agreement on behalf of the company.

The participation agreement included the acknowledgment that Mr. Hamra, as the participant, had received and "had an opportunity to review the Landmark Bancshares Deferred Director Fee Plan (the 'Plan')." It stated, "The Participant desires to become a Participant in the Plan, all the terms of which are incorporated herein by reference, and agrees to carry out and be bound by all the terms in the Plan."

The participation agreement provided that Landmark would withhold $5,200 per year from Mr. Hamra's compensation for a period of five years. That amount was to "be retained by [Landmark] pursuant to, and as provided in the Plan." It provided that the participant would "be entitled to receive annual Benefits of *$28,240.21* for a period of ten years, payable in periodic ·installments not less frequently than annually, as provided in Section 6.1 or 6.2 of the Plan, as the case may be."

Section 6.1 of the plan is directed to retirement benefits. It states that a participant is entitled to the benefits set forth in that participant's participation agreement following the participant attaining 65 years of age. Section 6.2 provides a death benefit in the event a participant dies before attaining age 65, or if a participant dies while receiving retirement benefits, it provides the remaining payments due under the terms of Section 6.1 will be paid to the participant's designated beneficiary.

Section 6.5 of the plan states, however, that termination of a participant's services as a director by Landmark before the participant attains 65 years of age terminates Landmark's obligations under the plan. It says:

Notwithstanding anything to the contrary contained herein or otherwise, the termination of a Participant's service as a Director prior to attaining the age of sixty-five regardless of the reason for such termination shall terminate any and all obligations of the Company to the Participant under the Plan, provided that the Company shall assign any and all policies purchased by the Company on the life of, or based upon the age of the Participant, for the purpose of funding the Company's obligation to provide Benefits to the Participant, to the Participant.

On December 20, 1991, Magna Group, Inc., (Magna) acquired Landmark. Landmark was merged into Magna Acquisition Corporation. That same date the name of Magna Acquisition Corporation was changed to Landmark Bancshares Corporation. Magna did not retain Mr. Hamra as a director.

Mr. Hamra was notified by letter dated August 11, 1992, that the plan was being terminated. He was told that "terminated directors" would receive a lump sum payment September 1, 1992, equal to the larger of an account balance based on the amounts contributed to the plan with accumulated interest, or the cash surrender value of Landmark's insurance policy on his life. He was given "the option of receiving cash, the policy on [his] life or a combination of cash and policy."

Magna explained to Mr. Hamra by letter dated September 28, 1992, that his options were to receive a cash payment in the amount of $31,599.84, or cash in the amount of $7,444.39 and "absolute assignment" of the insurance policy Magna owned on his life. Mr. Hamra did not exercise either option. He brought this action contending he was entitled to receive benefits totaling $282,402.10 with present value of $207,000.

Magna filed a motion for summary judgment as permitted by Rule 74.04 asserting

that Section 6.5 of the plan precluded recovery by Mr. Hamra because his bank directorship ended before he reached age 65. The trial court awarded summary judgment to Magna.

The first point on appeal is directed to Count I, appellant's claim for breach of contract. Appellant asserts the trial court erred in finding the plan was not ambiguous and thereby awarding summary judgment for Magna on Count I. He says the plan is susceptible of two or more interpretations; that the trial court was required to consider the document as a whole and, when doing so, the trial court's determination renders the plan illusory because there would be no obligation to a person whose position as a member of the board of directors of Landmark was terminated prior to age 65.

Appellant's argument that the plan is ambiguous is directed to Section 6.5 that states Landmark's obligation to a director whose service is terminated before reaching age 65 is limited to assigning "any and all policies purchased by the Company on the life of, or based upon the age of the Participant, *for the purpose of funding the Company's obligation to provide Benefits to the Participant,* to the Participant." [Emphasis added.] He contends the italicized words required Landmark to purchase sufficient life insurance to fund the obligation to pay him $28,240.21 per year for 10 years. He argues that this language must be ignored if Section 6.5 is given the interpretation on which Magna relies. Based on that argument, appellant contends the plan is susceptible to two interpretations; that it is, therefore, ambiguous.

■ This court does not find the language of Section 6.5 susceptible to more than one meaning. Simply stated, it provides that if a director ceases serving in that capacity before attaining age 65, he is not entitled to receive benefits under the plan. The language about which appellant complains requires Landmark to assign any policies of insurance it may have acquired to meet obligations it would have incurred if appellant had served as a director until he reached the

age of 65 or died while serving as a director but before attaining age 65. Section 6.5 did not impose a duty on Landmark to purchase insurance that would have funded an obligation to pay appellant $28,240.21 per year for 10 years.

As proclaimed by Justice Oliver Wendell Holmes, Jr., in *U.S. v. Brown,* 42 Ct.Cl, 534, 206 U.S. 240, 27 S.Ct. 620, 51 L.Ed. 1046 (1907), "[W]hatever the consequences, we must accept the plain meaning of plain words." 206 U.S. at 244, 27 S.Ct. at 621. This court finds no ambiguity in Section 6.5.

The second argument appellant advances under Point I is that when Section 6.5 is read in conjunction with Article V of the plan, Section 6.5 becomes "meaningless or illusory." Article V states:

All assets which may be set aside or earmarked for the payment of benefits hereunder shall be owned and controlled at all times by the Company and shall be a part of the unrestricted assets of the Company subject to the claims of such Company's general creditors and available at all times for such Company's use for whatever purpose such Company shall determine. Neither a Participant nor any Beneficiary shall have any vested or other interest of any kind in any of the assets of the Company which have [sic] set aside or earmarked for the payment of benefits hereunder nor shall the Participant or Beneficiary have any interest in any other assets of the Company. This Plan shall not be deemed to constitute or create a trust between the Company and any Participant or Beneficiary nor shall the Benefits payable to a Participant or Beneficiary under this Plan be deemed in any way to be secured. To the extent any assets of the Company (including policies of insurance) may be designated to provide benefits for individual Participants, such amounts are utilized solely for administrative purposes to provide a reasonable method of accounting for, measuring and defining the amount of Benefit which is payable under this Plan and the Company

is not required to utilize the assets in the Participant's account in payment of any Benefits hereunder.

Article V does not require Landmark to fund the benefits payable under Section 6.5. Appellant contends this would result in Landmark having no real obligation to any director who participated in the plan. He argues:

> Respondent's interpretation of Section 6.5 when viewed under the microscope of justice, reveals that it would really have no obligation to Directors. For example, it could terminate a Director at any time prior to their 65th birthday, and since Article V does not require the purchasing of an annuity or life insurance policy, it would owe absolutely nothing to a participating Director. Accordingly, a Director such as Appellant could pay $26,000.00 into the Plan and receive nothing upon being terminated prior to reaching age 65.

Appellant contends this amounts to an ambiguity under the terms of the plan.

 The fact that the language of the plan is not favorable to appellant under all circumstances does not render the language ambiguous. "When the language of a contract is plain, there can be no construction...." *L & K Realty Co. v. R.W. Farmer Const. Co.*, 633 S.W.2d 274, 278 (Mo.App. 1982). A court takes the language of a contract as it finds it.[1] The fact that parties have reached an agreement that can produce unusual or bizarre results does not render the agreement unenforceable. *Burns v. Beeny*, 427 S.W.2d 772, 776 (Mo.App.1968).

Article V and Section 6.5 are unrelated provisions. Article V determines ownership of assets Landmark may acquire to better prepare it to meet its obligations under the plan. It does not address payment of benefits, eligibility requirements to participate in the plan, or termination of a participant. Those provisions are set forth in Article VI,

of which Section 6.5 is a part. Article V is not in conflict with Section 6.5. Point I is denied.

Point II is also directed to Count I of the amended petition, the claim for breach of contract. It is directed to Article III of the plan. The first issue raised by Point II relates to Magna's administration of the plan. Appellant points to a part of Article III that states, "The Plan shall be administered by the Compensation Committee of the Board of Directors of the Company [i.e., Landmark Bancshares Corporation]." Article III includes:

> [T]he Committee shall have the general management of the Plan and the sole, final and absolute right to reconcile any inconsistency in the Plan; to interpret and construe the provisions of the Plan in all particulars, in such manner and to such extent as it deems proper; and to take all action and make all decisions and determinations necessary under the Plan or in connection with its administration, interpretation and application.

Appellant contends the trial court erred in finding that Magna had authority to interpret the provisions of the plan; that the determination was contrary to the provision in Article III vesting that authority in the compensation committee of the Landmark board of directors.

One of the facts alleged by Magna in its motion for summary judgment was that when it acquired Landmark it assumed Landmark's rights and obligations under the plan. Appellant's response admitted that allegation. *See* Rule 74.04(c)(1) and (2). Any claim to the contrary in Point II is denied.

Appellant's remaining allegation of error in Point II is that Magna's interpretation of Section 6.5 of the plan was made arbitrarily and capriciously; that the granting of summary judgment was, therefore, erroneous. That complaint is based on the same inter-

---

1. As explained in *Slusher v. Mid–America Broadcasting, Inc.*, 811 S.W.2d 443, 447 (Mo.App. 1991), "The parties to this contract were perfect-

ly free to contract as they wished, and this court should not resort to construing a contract which calls for no construction."

pretation of Section 6.5 appellant asserted with respect to Point I. Having decided the issue contrary to appellant in determining Point I, viz., that Magna's interpretation of Section 6.5 was not erroneous, and there being no showing of fraud or gross mistake by Magna in its management of the plan, the allegation is without merit. Point II is denied. *See Caulfield v. George K. Baum & Co.*, 649 S.W.2d 456, 459 (Mo.App.1983); *Loomis v. Greyhound Retirement & Disability*, 627 S.W.2d 669, 671 (Mo.App.1982).

Point III is directed to the award of summary judgment as to Count II of the amended petition, the promissory estoppel count. Appellant contends the trial court erred in granting summary judgment because there was a dispute as to a material fact because Mr. Blair's deposition testimony was that he told appellant the only requirement that had to be met in order for a director to receive benefits was for the director to serve and contribute the required fees for 5 years; that a director who did so was not required to serve until age 65 in order to qualify to receive benefits. Mr. Blair testified that he received that information from Landmark's board of directors and that he conveyed it to appellant.

Jim Blair's communication with appellant occurred before appellant's participation agreement was executed. The participation agreement recited that the terms of the plan were a part of the participation agreement by means of incorporation by reference; that appellant had received and had an opportunity to review the plan. Appellant asserts, nevertheless, that he is entitled, by reason of promissory estoppel, to benefits because of the representations made by Jim Blair.

■ To recover on the basis of promissory estoppel there must have been (1) a promise, (2) on which the party seeking to recover relied to his or her detriment, (3) in a way the person making the promise expected or should have expected, and (4) the reliance results in an injustice which can be cured only by enforcement of the promise. *Response v. Blue Cross & Blue Shield*, 941

S.W.2d 771, 778 (Mo.App.1997). However, the remedy of promissory estoppel is not available when an unambiguous contract exists that covers the issue for which damages are sought. *Hill v. McDonald's Corp.*, 709 S.W.2d 169, 171 (Mo.App.1986); *Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36, 40 (Mo.App. 1980). Promissory estoppel cannot be used to create rights not included within the contract. *Hill v. McDonald's Corp., supra.*

Appellant's participation agreement is the contract that defines the benefits he would receive. This court has concluded in addressing Point I that the contract is unambiguous. The contract does not provide benefits to a participant who is not serving as a director at the time he or she attains 65 years of age. Promissory estoppel cannot be utilized to engraft a promise on a contract that is different from its written terms. *Laclede Inv. Corp. v. Kaiser, supra.* Point III is denied.

■ Point IV is directed to the summary judgment entered with respect to Count III, appellant's claim for negligent misrepresentation. Point IV asserts the trial court erred in granting summary judgment as to Count III because there is a dispute of a material fact concerning whether appellant could justifiably rely on Mr. Blair's statements that it would not be necessary for appellant to remain a director until age 65 in order to receive benefits under the plan.

To maintain a cause of action for negligent misrepresentation, one must show: (1) that speaker supplied information in the course of his business or because of some other pecuniary interest; (2) that, due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) that speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) that listener justifiably relied on the information and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss. *Chubb Group of Ins. v. C.F. Murphy &*

*Assoc.*, 656 S.W.2d 766, 783–784 (Mo.App. W.D.1983); *Ligon Specialized Hauler, Inc. v. Inland Container Corp.*, 581 S.W.2d 906, 909 (Mo.App. E.D.1979); W. PAGE KEETON, PROSSER AND KEETON ON TORTS §§ 107–110 (5th ed.1984) (citing RESTATEMENT (SECOND) OF TORTS § 552 (1977))....

*Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 689 (Mo.App.1994). Summary judgment is proper when the proponent of a negligent misrepresentation claim cannot provide proof of all elements of that tort. *Id.*

The issue in Point IV is whether appellant could *justifiably* rely on representations made by Mr. Blair that he would be entitled to benefits if he were no longer a director when he reached age 65. According to appellant's deposition testimony, he was provided a copy of the plan and the participation agreement at a meeting of the board of directors of Landmark or shortly thereafter. He had seen both documents before he met with Mr. Blair to discuss his possible participation in the plan.

Mr. Hamra was asked if Mr. Blair ever discussed the provision of the plan that stated what would happen if he were no longer a director when he reached age 65. He answered:

> That wasn't—that was never a problem. In other words, this was a guaranteed participation and return, and there was never any question about whether you were a director or not; in other words, once you bought into the plan and paid for five years, you were going to get that. This was guaranteed.

Mr. Hamra was asked the following question and gave the following answer:

> Q. You remember specifically discussing the termination under paragraph 6.5 with Mr. Blair?

> A. I can't tell you about specifically that specific point. What I was concerned about was if we withheld our payments, did not receive our money, as directors from the local Landmark Bank and the holding company of Landmark Bank for five years without any use of that money, for five years, would we be guaranteed, regardless of what would happen, when I reached 65, would I get 28,000 plus for ten years, and he assured that.

Mr. Blair's deposition testimony was before the trial court. He was asked if he read paragraph 6.5 of the plan before he made presentations to individual directors. He answered, "No, I had not." He testified that he had been told by personnel of Landmark to whom he answered that directors "would receive their full benefits if they deferred 5 years, and if they reached age 65." He was asked if anyone at Landmark advised him that a director who was terminated before reaching age 65 would only receive an assignment of some life insurance policy. He answered, "No."

■ Enforcement of a provision of a contract cannot be defeated merely by showing another party misrepresented its legal effect. *St. Joseph Lead Co. v. Fuhrmeister*, 353 Mo. 232, 182 S.W.2d 273, 279 (1944); *Motor Transp. Springfield v. Orval Davis Tire Co., Inc.*, 585 S.W.2d 195, 200 (Mo.App. 1979). A contracting party is bound by the terms of the written contract he or she executes. *Bearden v. Countryside Cas. Co.*, 352 S.W.2d 701, 706 (Mo.App.1961). "[The law] is not an indulgent guardian which can go to romantic length of giving protection against consequences of indolence, folly or careless indifference to ordinary and accessible means of information. *Dickinson v. Bankers Life & Casualty Co.*, Mo.App., 283 S.W.2d 658." *Gooch v. Motors Ins. Co.*, 312 S.W.2d 605, 609 (Mo.App.1958).

■ This court finds no error in the trial court granting summary judgment for Magna on Count III. Appellant is an experienced attorney and businessman. The record reveals no justifiable basis for him to have relied on statements by the insurance agent contrary to the plain language of the plan. Point IV is denied. The judgment is affirmed.