Kathy Jo BLACKBURN,
et al., Respondents,

v.

HABITAT DEVELOPMENT
COMPANY, et al.,
Appellants.

No. 23805.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 22, 2001.

Gardiner B. Davis, Spencer, Fane, Britt & Browne, LLP, Kansas City, for Appellant.

James D. Sickal & John E. Curran, Curran & Clifford, Osage Beach, for Respondent.

ROBERT S. BARNEY, Chief Judge.

Habitat Development Company, ("HDC") and Paul Willman and Sue Will-man ("Appellants") appeal from a declaratory judgment of the Circuit Court of Camden County in favor of Kathie Jo and Steven Blackburn, Melba Simons, Christopher and Kelly Myers, Steven and Ashley Norman, Richard and Cassie Hill, Sally June Taylor, Michael and Janine Vogel, and Pete and Betty Jo Gore ("Respondents"). In its judgment, the trial court granted Respondents rights to use, construct and maintain a common boat dock and attendant slips in a lakefront lot located in Shadow Woods Subdivision in Camden County ("Lot 14"), fronting the Lake of the Ozarks. The trial court also ordered the transfer of title to Lot 14 from HDC to Respondents, as tenants in common, and further gave recognition to an easement "across all of Lot 14" in favor of Respondents.[1]

HDC was incorporated as a real estate development and construction corporation whose stock was owned by Harold and Sally Taylor. They were also HDC's sole directors and officers. In 1985 Harold and Sally Taylor dissolved their marriage and Harold Taylor became the sole owner of the shares of stock of HDC. He continued as its chief executive officer and agent until his demise. HDC operated from approximately 1978 to October of 1993, when Harold Taylor died.[2]

One of HDC's developments was Osage Beach Harbor Subdivision ("OBHS"), adjacent to the Lake of the Ozarks ("lake"), near Osage Beach, Missouri. Included in the subdivision were various lakefront lots as well as non-lakefront, "upper tier" lots.

---

1. Marvin and Mildred Mallickrodt, Thomas and Susan Rogers, and Linda L. Sump also are lot owners in the Shadow Woods Subdivision. They, together with Geoffrey and Dorothy Hartzler, were also named defendants in the petition with Appellants. However, it does not appear that they have joined Appellants in this appeal.

In this opinion references to "Respondents" also include Respondents predecessors in interest where applicable.

2. HDC was administratively dissolved in 1994. None of the parties question the standing of HDC as a party in this litigation. See §§ 351.476 and 351.486, RSMo 1994.

The upper-tier lots were designated as Block A, Block B, and Block C. One of the lakefront lots was Lot 14.

In May of 1980, HBC divided Block B into 12 numbered lots and renamed Block B as the Shadow Woods Subdivision ("Shadow Woods"). Blocks A and C were not divided into numbered lots. Between December of 1980 and July of 1988, HDC conveyed all of the lots in Shadow Woods to Respondents and to other parties who have not appealed the judgment.

In February of 1984, HBC recorded a "Dedication" which read as follows:

Comes now Habitat Development Company, a Missouri corporation, hereinafter "Dedicator", and dedicates Lot 14 of Osage Beach Harbor Subdivision, a subdivision of Camden County, Missouri, according to the plat thereof on file and of record in the Office of the Recorder of Deeds, Camden County, Missouri, to the use of the owners of the following blocks or portions thereof in Osage Beach Harbor Subdivision:

Block A

Block B and

Block C

for the nonexclusive use for access to the Lake of the Ozarks. This use specifically excludes the right to attach boat docks, boat houses or floating structures to or locate same in front thereof. Dedicator and its successors and assigns reserve the right to use said Lot 14 in a manner in which does not substantially interfere with the use of the owners as herein dedicated, and reserve the right to dedicate similar uses of said lot to other owners of property in Osage Beach Harbor Subdivision or resubdivisions thereof. Dedicator, its successors and assigns reserve the exclusive right to attach a boat dock to and to locate a boat dock in front of said lot.

During the course of trial, Respondent, Sally Taylor, a former co-owner of HDC with Harold Taylor, testified that in selling the Shadow Woods lots the marketing strategy of HDC was to promise to provide a community boat dock on Lot 14 in order to make the lots competitive with other land developments near Shadow Woods. Over Appellants' objections various Respondents testified that Harold Taylor, as agent for HDC, made representations to them that HDC intended to build a community boat dock on Lot 14 in the future and that the dock was to be used for the benefit of the various lot owners in the subdivision. Several Respondents testified that Harold Taylor had informed them they could construct the dock themselves as long as boat slips were placed on Lot 14 two at a time so that the dock could be expanded, and that these slips could be constructed for about $2,500.00.[3] Several Respondents also testified that Mr. Taylor repeated these representations to them after they had purchased their lots. The Respondents generally testified that they relied on these statements in purchasing their lots or parcels and that they paid more for their properties because they believed that there would be a community boat dock in the future and that they would not have purchased their lots otherwise. While several owners testified that they used Lot 14 to access the lake, no dock or dock slip was ever constructed by any of the lot owners. There was evidence, however, of some lot owners clearing brush and other debris from Lot 14 to improve access to Lot 14.

---

3. The record is devoid of any deed of conveyance or any written document containing a specific reference or promise by HDC or its agents to build a community boat dock on Lot 14.

Harold Taylor owned Lot 15 located adjacent to Lot 14 and resided in a home there. After his death, Sue Willman became president of HDC. Shortly thereafter access to Lot 14 was blocked and Respondents were unable to access the lake through Lot 14. Subsequently, Respondents filed suit against Appellants asking the trial court for its declaration of their rights regarding the right to use, construct and maintain a community boat dock with individual slips adjacent to Lot 14, together with other affirmative relief.

In its declaratory judgment, *inter alia,* the court: (1) adjudged that the "Dedication" created "an easement for access to [the lake] across all of Lot 14 in favor of all owners of lots and parcels within Blocks A, B and C of [OSBH] ...", and that "each and every lot owner within Blocks A, B and C is an assignee and successor in interest to HDC ... and ... [has] the right to own a boat slip in a community dock attached to Lot 14 ... on the waters of [the lake];" (2) ordered HDC "or its statutory trustees, to convey all current lot owners of [Shadow Woods] as tenants in common all of Lot 14 for the common use and benefit of said [Respondents]" including, but not limited to, the "construction and placement of a boat dock with individual slips purchased by [Respondents], on the [lake], and attached to Lot 14;" (3) found that "[HDC] has no right to convey Lot 14 of [OSBHS], or in any way interfere with the use of said lot by [Respondents] and the· lot owners of [Shadow Woods];" and (4) determined that "declaration of restrictions applicable to Shadow Woods, being the [OSBH] restrictions ... clearly [set] forth that [Respondents] are to have the right to use a common boat dock which, according to the representations made by [HDC and Mr. Taylor] was to be located adjoining and/or adjacent to said Lot 14 and accessible to [Respondents] from Lot 14." This appeal followed.

## I.

In Point One, Appellants maintain that the trial court erred in allowing parol evidence to expand the terms of the "Dedication" granted by HDC. They argue that by clear and unambiguous language the "Dedication" under review gave Respondents only limited "lake access" rights and excluded any rights to build a boat dock, and that HDC reserved unto itself the sole right to build a boat dock and boat slips on Lot 14.

In their second point, Appellants attack the trial court's grant of an easement or license to Respondents to build a boat dock on Lot 14 under a theory of promissory estoppel. Appellants maintain there is no basis for the application of the promissory estoppel doctrine when deeds evidenced the parties' intentions; that the deeds were silent regarding any promise to Respondents which granted them the right to build and maintain a boat dock and boat slips on Lot 14. They asserted that all verbal promises were extinguished by and merged into the respective deeds under the doctrine of merger. Accordingly, they argue that parol evidence was inadmissible to alter/expand the terms of the respective deeds.

In their fourth point, Appellants premise trial court error based on its divesting HDC of the fee simple title to Lot 14 and granting Respondents, as tenants in common, the fee simple title to Lot 14.[4] They argue that the controversy was limited to Respondents' rights to a license or easement to build a boat dock on Lot 14, that title to Lot 14 was never in dispute, and

---

4. Because of our analysis of Appellants' points, it is not necessary to review Appellant's third point which is premised on violation of the Statute of Frauds.

that it was not necessary to convey Respondents a fee simple title in order to grant Respondents an easement or license relating to Lot 14.

In Point Five, Appellants maintain the trial court erred in failing to apply the parol evidence rule in determining that "Restrictions" applicable to OSBHS gave Respondents the "right to use a common boat dock." They maintain that the "Restrictions" were merely restrictions on the use of any community dock that might be built, did not create any grant, right or interest in any community dock and that the trial court's ruling unlawfully altered and expanded the clear language of the "Restrictions."

■■■■ "When reviewing a declaratory judgment, our standard of review is the same as in any other court tried case." *Cronin v. State Farm Fire & Cas. Co.*, 958 S.W.2d 583, 584 (Mo.App.1997). Accordingly, review of this action is as set forth in Rule 84.13(d), Missouri Court Rules (2001). *Smith v. Woodard*, 15 S.W.3d 768, 771 (Mo.App.2000). The judgment will be affirmed unless it is against the weight of the evidence, there is insufficient evidence to support it, or it erroneously declares or applies the law. *Id.* "[T]his [C]ourt views the evidence and permissible inferences drawn therefrom in a light most favorable to the judgment." *Id.; Klinckman v. Pharris*, 969 S.W.2d 769, 770 (Mo.App. 1998). This Court should defer to the trial court in judging the credibility of witnesses and resolving conflicting evidence. *Warren v. Tom*, 946 S.W.2d 754, 757 (Mo. App.1997). "A court should exercise the power to set aside a decree or judgment on the ground that it is against the manifest weight of the evidence with caution." *Id.*

## II.

In their first point, as previously set out, Appellants argue that the trial court erred in failing to apply the parol evidence rule and allowing evidence to be introduced at trial which expanded the easement/license rights set forth in the Dedication. Appellants maintain that the Dedication was unambiguous on its face; strictly reserved the right of Habitat to build a dock on Lot 14; and expressly excluded upper tier lot owners from the right to build a dock on Lot 14.

■■■■ "Both a license and easement give the grantee the right to go onto the grantor's property for a limited use." *Borton v. Forest Hills Country Club*, 926 S.W.2d 232, 234 (Mo.App.1996). "An easement entitles its owner to a limited use or enjoyment of the land of another." *Smith*, 15 S.W.3d at 772. "Although an easement is an interest in land, it is not an interest in the 'title' to the real estate that is subject to that easement." *Schrieber v. Aslinger*, 11 S.W.3d 816, 819 (Mo.App. 2000). "[N]o particular form and language are necessary to create an easement; rather, any words clearly showing the intention of the parties to create a servitude on a sufficiently identifiable estate is sufficient." *Hynes v. City of Lakeland*, 451 So.2d 505, 511 (Fla.App. 2 Dist.1984). While normally created by grant or prescription, an easement may also be acquired by agreement. *Rosenbloom v. Grossman*, 351 S.W.2d 735, 738 (Mo.1961).

■■■■ "A license is a privilege to enter certain premises for a stated purpose and does not vest any title, interest or estate in the licensee." *Hill v. Eads*, 970 S.W.2d 882, 883 (Mo.App.1998). "No formal language is necessary to create a license as long as the proper intent appears. . . ." 53 C.J.S. *Licenses* § 89. As a general rule it "can be revoked at the will of the licensor." *Hill*, 970 S.W.2d at 883; *see*, however, *Hermann v. Lynnbrook*

*Land Co.,* 806 S.W.2d 128, 130 (Mo.App. 1991)(to avoid a harsh result equitable estoppel may be applied to secure enjoyment of a license where licensee made material expenditures of money or labor); *see Allee v. Kirk,* 602 S.W.2d 922, 925 (Mo.App. 1980).

▪ Turning now to the question of the Dedication under review, we observe that in a strict sense, "the term *dedication* is properly applied to the creation of easements in favor of the general public." *Anderton v. Gage,* 726 S.W.2d 859, 862 (Mo.App.1987)(emphasis added). Here, however, the Dedication under scrutiny is acknowledged by all parties as having created either an easement or a license exclusively in favor of owners of lots located in the Shadow Woods and OSBHS. *See Horrighs v. Elfrank,* 727 S.W.2d 910, 913 (Mo. App.1987). We have no quarrel with this limited interpretation of the instrument. *Id.*

In their petition, however, Respondents also claimed that the Dedication was ambiguous and contradictory. In the trial below, the court allowed Respondents to present parol evidence, as previously set out, which interpreted the Dedication executed by HDC. In its judgment, the trial court stated, "[e]ach [Respondent] and lot owner in Blocks A, B and C of [Osage Beach Harbor Subdivision] are [sic] assigns of [Habitat], and are entitled to attach a community boat dock to the said property, and each lot owner own one slip."

▪ "[A]bsent ambiguity the intent of the maker of a legal instrument is to be ascertained from the four corners of the instrument without resort to extrinsic evidence . . . ." *Commerce Trust Company v. Duden,* 523 S.W.2d 97, 99 (Mo.App.1975). A document is not ambiguous merely because the parties disagree over its meaning. *Lowery v. Air Support Int'l, Inc.,* 982

S.W.2d 326, 329 (Mo.App.1998). Extrinsic and parol evidence cannot be used to create an ambiguity. *Coale v. Hilles,* 976 S.W.2d 61, 66 (Mo.App.1998).

▪ In interpreting easements and deeds affecting land, we must ascertain the intention of the grantor from the whole of the instrument "allowing them to be effective 'in line with the intent of their faces as gathered from the everyday, good sense of their language.'" *Knox College v. Jones Store Co.,* 406 S.W.2d 675, 680 (Mo.1966)(quoting *Eckle v. Ryland,* 256 Mo. 424, 165 S.W. 1035–1043 (1914)). In this context, "auxiliary rules of construction should not be employed where the intention of the grantor is clearly expressed." *Id.* We reject an interpretation that involves unreasonable results when a probable or reasonable construction can be adopted. *See Jackson v. Christian Salvesen Holdings, Inc.,* 978 S.W.2d 377, 383 (Mo.App.1998).

▪ "In Missouri, we state the parol evidence rule in classical terms. In the absence of fraud, accident, mistake, or duress, the parol evidence rule prohibits evidence of prior or contemporaneous oral agreements which vary or contradict the terms of an unambiguous, final and complete writing." *Jake C. Byers, Inc. v.. J.B.C. Investments,* 834 S.W.2d 806, 811 (Mo.App.1992); *see Commerce Trust Co. v. Watts, supra,* 360 Mo. 971, 231 S.W.2d 817, 820 (Mo.1950). "The rule is justified on the basis of two premises: (1) a written document is more reliable and accurate than fallible human memory, and (2) varying written terms by extrinsic oral evidence opens the door to perjury." *Poelker v. Jamison,* 4 S.W.3d 611, 613 (Mo.App. 1999). "It is not a rule of evidence. In a proper case for the application of the rule, even if the parol evidence be received without objection, it must be ignored."

*Commerce Trust Co.*, 231 S.W.2d at 820. "The writing itself becomes and is the single and final memorial of the understanding and intention of the parties." *Id.*

There are two basic provisions in the Dedication addressing the right to build a boat dock. First, the easement created by the Dedication clearly limits the lot owners' use of Lot 14 to "lake access" only. *It does not grant a right to use, construct or attach a boat dock on Lot 14.* Indeed, the instrument plainly sets out that "*[t]his use specifically excludes the right to attach boat docks, boat houses or floating structures to or locate same in front thereof.*" (Emphasis added.) Second, the Dedication contains additional language clearly reserving to HDC and its successors and assigns the right to build a boat dock on Lot 14. The trial court's conclusions of law, that Respondents were "assigns" for purposes of the Dedication, represents a strained interpretation of the instrument's provisions. By its very terms when the easement was declared, it in no way granted any lot owner the right to construct or maintain a boat dock or boat slip on Lot 14. HDC as grantor is "considered as having retained all such rights and interests as were not expressly or by necessary implication conveyed." *Bradley v. County of Jackson*, 347 S.W.2d 683, 687 (Mo.1961). It is our view, after having perused the Dedication, that the trial court erred in receiving parol evidence in an attempt to interpret its provisions. The instrument was clear on its face. Its provisions were neither ambiguous nor confusing. *See Robert Jackson Real Estate Co. v. James*, 755 S.W.2d 343, 346–47 (Mo. App.1988). Point One is well taken.

### III.

In their second point, Appellants argue that the trial court erred in granting a license or easement to Respondents "under the theory of promissory estoppel." They maintain that any promises relating to a boat dock or boat slip that may have been made by HDC were extinguished by and merged into Respondents' respective deeds in accordance with the doctrine of merger, and parol evidence was inadmissible to alter or expand the terms of the deeds.

"Missouri permits recovery by application of the doctrine widely referred to as 'promissory estoppel.'" *Delmo, Inc. v. Maxima Elec. Sales, Inc.*, 878 S.W.2d 499, 504 (Mo.App.1994); *see* RESTATEMENT (SECOND) OF CONTRACTS § 90 (1979).

> To recover on the basis of promissory estoppel there must have been (1) a promise, (2) on which the party seeking to recover relied to his or her detriment, (3) in a way the person making the promise expected or should have expected, and (4) the reliance resulted in an injustice which can be cured only by enforcement of the promise.

*Halls Ferry Invs., Inc. v. Smith*, 985 S.W.2d 848, 853 (Mo.App.1998); *see Midwest Energy v. Orion Food Systems, Inc.*, 14 S.W.3d 154, 164 (Mo.App.2000). "The promise giving rise to the cause of action must be definite ... and the promise must be made 'in a contractual sense.'" *Prenger v. Baumhoer*, 939 S.W.2d 23, 26 (Mo. App.1997) (citation omitted). Furthermore, "in promissory estoppel cases, the focus should be on how the promise relates to 'its ability to provoke reliance' rather than just the promise in isolation." *Id.* at 27. "[A] supposed promise that is 'wholly illusory' or a mere expression of intention, hope, desire, or opinion, which shows no real commitment cannot be expected to induce reliance." *Id.* n. 5 Furthermore, "a promisee seeking to enforce a promise under the doctrine of promissory estoppel must show that his or her reliance on the promise was reasonable." *Delmo, Inc.*,

878 S.W.2d at 505; *Midwest Energy,* 14 S.W.3d at 164.

▇▇▇▇▇▇ "[F]raud is not an element of promissory estoppel." *Delmo, Inc.,* 878 S.W.2d at 505. "As distinguished from fraud, the doctrine of promissory estoppel is not concerned with good faith or bad faith of the promisor in making the promise allegedly relied on; that is irrelevant to the issue of whether an enforceable promise was in fact made." *Footwear Unlimited, Inc. v. Katzenberg,* 683 S.W.2d 291, 296 (Mo.App.1984). The application "of the doctrine of promissory estoppel is to be used with caution, sparingly and only in extreme cases to avoid unjust results." *Midwest Energy,* 14 S.W.3d at 165; *Geisinger v. A & B Farms, Inc.,* 820 S.W.2d 96, 98 (Mo.App.1991). "The burden of proof is on the party asserting the estoppel...." *Resnik v. Blue Cross and Blue Shield,* 912 S.W.2d 567, 573 (Mo.App.1995). Proof must be by "clear and satisfactory evidence," *id.,* sometimes referred to as "clear and convincing evidence." *Geisinger,* 820 S.W.2d at 99.

▇▇▇▇ As relates to promissory estoppel, it has been stated that "Missouri courts have refused to apply the doctrine as means of overcoming the Statute of Frauds in a real estate sale case." *Meinhold v. Huang,* 687 S.W.2d 596, 599 (Mo. App.1985); *see also Sales Service Inc. v. Daewoo Int'l Corp.,* 770 S.W.2d 453, 457–58 (Mo.App.1989). In *Longmier v. Kaufman,* 663 S.W.2d 385 (Mo.App.1983) the court refused to permit circumvention of the oral lease statute, § 441.060, RSMo 1978, by means of promissory estoppel. "We may conclude from these cases that there is a reluctance by our courts to abrogate the Statute of Frauds except in the most extraordinary situations." *Geisinger,* 820 S.W.2d at 99. "There is an understandable concern that to completely embrace the doctrine would be to totally abrogate the Statute." *Id.* "Consequently, the case law direction is to proceed with caution and to apply the doctrine only to avoid unjust results." *Id.*

The trial court relied extensively on the opinion of *Chesus v.. Watts,* 967 S.W.2d 97 (Mo.App.1998) when it determined in its judgment, through use of the doctrine of promissory estoppel, that Respondents were entitled to construct, use, and maintain a boat dock and slips on Lot 14.

In *Chesus,* the appellate court recognized that a *homeowner's association* created by a developer had standing to sue the developer under a theory of promissory estoppel, following the developer's failure to provide basic services and various amenities as marketed and promised to the lot purchasers. *Id.* at 104–06, 109. However, the appellate court also remarked that *"promissory estoppel serves as an equitable remedy where an express contract does not exist,"* and cautioned "the court must only apply the doctrine in those situations where an unjust decision would otherwise result." *Id.* at 106 (emphasis added).[5]

▇▇▇▇▇ In the instant case it is clear that respective contracts existed between the developer, HDC, and Respondent lot owners. We observe that "[a] deed, though signed by the grantor only, when delivered to and accepted by the grantee, becomes a contract in writing." *Employers' Indemnity Corp. v. Garrett,* 327 Mo. 874, 885, 38 S.W.2d 1049, 1053 (Mo.1931). In the instant matter, the conveyance of respective warranty deeds from HDC to the respective Respondents and the receipt and acceptance by these Respondents

---

5. As best we discern, none of the homeowners in *Chesus,* individually, premised their causes of action against the developer on the basis of the doctrine of promissory estoppel.

of these warranty deeds, constituted the finalization of the contractual obligations of the parties. *See Taylor v. Seaman,* 932 S.W.2d 912, 914 (Mo.App.1996).[6]

■ As in *Chesus,* this Court has noted that "[p]romissory estoppel cannot be used to create rights not included within the contract." *Hamra v. Magna Group, Inc.,* 956 S.W.2d 934, 939 (Mo.App.1997); *Halls Ferry Investments, Inc.,* 985 S.W.2d at 853. As previously set out, no warranty deed from HDC to the various Respondents contained any covenants or representations authorizing either the use, construction or maintenance of a boat dock and slips adjacent to Lot 14. The trial court's judgment granting an easement or license to Respondents for the purposes of using, constructing and maintaining a community boat dock with slips and premised on promissory estoppel was in error. *See Halls Ferry Investments, Inc.,* 985 S.W.2d at 853; *Hamra,* 956 S.W.2d at 939; *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 673 (Fed.Cir.2000); *see also Chesus,* 967 S.W.2d at 106. The trial court erroneously declared and applied the law. *Warren,* 946 S.W.2d at 757. Point Two is well taken.

As previously set out, Point Three will not be reviewed because Points One, Two, Four and Five are dispositive of this appeal.

## IV.

In their fourth point, Appellants maintain that the trial court erred in granting

Respondents fee simple title to Lot 14, as tenants in common. They also argue that neither a license nor an easement constitutes an interest in fee simple title to the real estate that is the subject of a license or easement. We agree.

■ While an easement is an interest in land, it does not convey the right of possession. *Helgeson v. Ochs,* 988 S.W.2d 545, 548 (Mo.App.1999). " 'An easement, strictly speaking, does not carry any title to the land over which it is exercised; it is rather a right to use the land for particular purposes.' " *Schrieber,* 11 S.W.3d at 819 (quoting *Smith v. Santarelli,* 355 Mo. 1047, 199 S.W.2d 411, 412 (1947)). Rights under a license are even more limited. As a general rule a license is merely "a personal right and as such, may be revoked at the will of the licensor." *Borton,* 926 S.W.2d at 234. Appellants' point has merit because under the facts of the instant case, the trial court abused its discretion in fashioning a remedy which was excessive in its scope.[7]

■ While the Declaratory Judgment Act, § 527.010, RSMo 2000, should be interpreted liberally it "is not a general panacea for all real and imaginary legal ills, nor is it a substitute for all existing remedies. It should be used with caution." *Cronin,* 958 S.W.2d at 587. "And except in exceptional circumstances plainly appearing, it is not to be used and applied where an adequate remedy already exists.' " *Id.* (citation omitted). Here, assuming arguendo that Respondents were

---

6. As a general rule, "[a]bsent proof of fraud, accident, mistake, or express contractual provision holding open a condition, none of which were alleged or proved here, the rights of parties to a real estate contract are merged in the subsequent deed." *Penrod v. Henry,* 706 S.W.2d 537, 540 (Mo.App.1986). Also, as a general rule, "parol testimony establishing fraud in the procurement of a written con-

tract 'cannot be legally used to control or vary the terms of such agreement.' " *Dowd v. Lake Sites,* 365 Mo. 83, 276 S.W.2d 108, 112 (Mo.1955)(quoting 20 Am.Jur. 968, § 1104).

7. We lay aside the obvious contradiction of a judgment which not only granted Respondents an easement over Lot 14 but also transferred title to lot 14 to Respondents.

entitled to construct and maintain a dock and attendant slips adjacent to Lot 14 for their use, this could have been accomplished by the grant of an appurtenant easement over Lot 14 to Respondents. The trial court abused its discretion in transferring to Respondents · title to the totality of Lot 14. In either event, for reasons set out, *supra,* Respondents were not entitled to the grant of either an easement or license for purposes of using, constructing and maintaining a boat dock and slips adjacent to Lot 14. Point Four is meritorious.

### V.

In their fifth point, Appellants argue that the trial court erred in failing to apply the parol evidence rule to prevent the receipt of oral testimony in ascertaining the meaning of certain restrictions filed by HDC in 1978.

■■■ In an instrument entitled "Restrictions to Lots in Osage Beach Harbor and Oak Run Subdivisions," hereinafter "Restrictions," and relating to Blocks A, B, C, D, F and G of the foregoing subdivision and Oak Run Division–HDC, as dedicator, set out certain negative, "do not" restrictions. These restrictions ranged from prohibitions against gas and oil tanks, above ground wires, exterior storage of trailers, campers, motor homes and trash receptacles; to trash burning and the repairing of automobiles. The instrument also provided, in pertinent part that:

13. The use of the common boat dock, swimming pools, tennis Courts, and trash receptacles, shall be in accordance with the regulations promulgated by the Osage Beach Harbor Association, its successors or assigns.

. . .

19. The dedicator reserves the right to make exceptions

to these provisions for good cause shown. A valid exception to these restrictions may be made only by a writing, executed by the dedicator, his successors or assigns.

In its judgment, the trial court determined that the "Restrictions," relating to a common boat dock, accorded Respondents the right to use a common boat dock which, according to oral testimony received at trial, was to be located adjoining and/or adjacent to Lot 14. The trial court erred as a matter of law in its interpretation.

In *Wildflower Comm. Assoc., Inc. v. Rinderknecht,* 25 S.W.3d 530 (Mo.App. 2000), the Western District of this Court described an instrument similar to the "Restriction" under review as a "Declaration" or a "restrictive covenant." *Id.* at 534. It observed that a restrictive covenant is a " 'private contractual obligation generally governed by the same rules of construction applicable to any covenant or contract.' " *Id.* (quoting *Kling v. Taylor-Morley, Inc.,* 929 S.W.2d 816, 819 (Mo. App.1996)). The Court also opined that " '[c]ourts should interpret covenants so as to give effect to the intent expressed by the plain language.' " *Id.* (quoting *Parkton Ass'n v. Armstrong,* 878 S.W.2d 50, 53 (Mo.App.1994)). That is, in order to ascertain its intent a court must give the words of the instrument their natural, ordinary and common sense meaning. *Id.* Furthermore, *Wildflower Community* teaches that a court must look at the entire instrument and consider the purpose and nature of the contract. *Id.* "Each provision is construed in harmony with the others to give each provision a reasonable meaning and avoid an interpretation that renders some provisions useless or redundant." *Id.*

■■■ Considering the foregoing principles in conjunction with the plain language of the "Restrictions," it is clear that the "Restrictions" were not meant to accord

any particular rights to the lot owners of the described subdivisions. Indeed, they were in the nature of negative easements

the effect of which is not to authorize the doing of an act by the person entitled to the easement, but merely to preclude the owner of the land subject to the easement from the doing of an act which, if no easement existed, he would be entitled to do.

*McLaughlin v. Neiger*, 286 S.W.2d 380, 383 (Mo.App.1956) (quoting *Wilson v. Owen*, 261 S.W.2d 19, 24 (1953)).

Looking at the entire "Restriction" instrument, we do not find its terms ambiguous. In considering its purpose and nature, we observe that of the 20 paragraphs contained in the "Restriction," at least 16 were prohibitions on the use of the lot owners' properties. While paragraph 13, *supra*, sought to regulate the use of various amenities in accordance with such regulations as were to be promulgated by the Osage Beach Harbor Owners Association in the future, no such regulations were promulgated. The trial court erroneously declared and applied the law in this instance. *Smith*, 15 S.W.3d at 771. Point well taken.

That part of the declaratory judgment of the trial court, finding and adjudging that the Dedication dated February 22, 1984, created an "easement for access to the Lake of the Ozarks across all of Lot 14 in favor of all the owners of lots and parcels within Blocks A, B [now Shadow Woods Subdivision] and C of Osage Beach Harbor Subdivision," is affirmed. In all other respects the declaratory judgment is reversed.

SHRUM, P.J., concurs.

MONTGOMERY, J., concurs.