Sidney H. Asch, J.
This is an action to recover damages in the sum of $100,000 constituting alleged lost profits resulting from a breach of contract of carriage with respect to a shipment of horse meat from New York City to Toulouse, France. Plaintiff alleges that it delivered a shipment of horse meat to defendant in sound, wholesome condition for transportation by air by the defendant for delivery to one Marino Bondi in Toulouse, France, but that said shipment was not delivered in a sound and wholesome condition and, as a result, the consignee rescinded its contract for future shipments.
Plaintiff alleges that defendant was a party to a tri-party agreement set forth in plaintiff’s letter of February 1, 1968 and Air France’s letter of February 16, 1968, whereby plaintiff sold to the said Marino Bondi of Toulouse, France, a quantity of horse meat to be transported by air by the defendant. Defendant contends that it was not a party to the contract of sale but acted in the capacity of common carrier of cargo by air and at all relevant times was otherwise acting only in the capacity of agent for the transmittal of funds from the consignee, Marino Bondi, to plaintiff.
Defendant received the goods in controversy from plaintiff, together with a sight draft representing the purchase price, for delivery to said Marino Bondi, in Toulouse, France. In its capacity as agent for the transmittal of funds, defendant collected the purchase price from Marino Bondi prior to delivery of the goods and transmitted it to the plaintiff. Subsequently, the entire shipment was found to be in a putrefied state and was condemned by the French health authorities;
Thereafter, the consignee, Marino Bondi, rescinded the contract with plaintiff and, on or about May, 1968, commenced an action in the Republic of France against defendant Air France to recover the sum of money he had theretofore paid prior to *992 delivery of the trial shipment. On or about June 18, 1969, the Court of Commerce of Toulouse, France, postponed rendering judgment in this action. The plaintiff Bondi appealed, and on or about May 26,1970, the Court of Appeals of Toulouse, France renderéd judgment in favor of Air France on the merits.
The present action was commenced on November 1, 1968, and issue was joined by service of an answer on December 12, 1968. Pursuant to court order, defendant served an amended answer on or about December 31, 1968, and a second amended answer on or about April 30, 1969. Both amended answers included counterclaims against the plaintiff for the price of a. ticket used by an employee of plaintiff who accompanied the shipment in controversy.
On or about December 27, 1968, plaintiff moved to dismiss defendant Air France’s affirmative defenses. After defendant’s amended answer and counterclaim were served, on or about December 31, 1968, the plaintiff amended its notice of motion and moved to dismiss the affirmative defenses in the amended answer, which affirmative defenses are precisely the same as those included in the present second amended answer. Plaintiff’s motion to dismiss the defendant’s affirmative defenses was ‘ ‘ on the ground that they respectively failed to set forth the material elements of a defense and failed to state a defense and, on their face, have no merit ’ ’. In its memorandum in support of its motion plaintiff argued, inter alia, that defendant’s defenses based on the conditions and provisions of defendant’s air waybill had no relevancy to the cause of action pleaded in the complaint since the complaint did not seek recovery of the value of the shipment or any part of the value. For the same reason, plaintiff argued that the Warsaw Convention provisions were also not applicable and that defenses based thereon were legally insufficient. On or about March 11, 1969, the Honorable Irving H. Saypol found these defenses to be legally sufficient and denied plaintiff’s motion to dismiss them.
Defendant has denied and continues to deny, inter alia, that the plaintiff’s description of the facts forming the bases of this action is accurate. However, for the purposes of this motion for summary judgment, except as hereinafter noted, defendant has assumed, arguendo, the accuracy of plaintiff’s factual allegations (not the legal conclusions) in paragraphs 5 through 8 of plaintiff’s complaint and paragraphs 2 through 10,12 through 17, 19, 20 and 22 of the plaintiff’s bill of particulars. Even under such an assumption as to the accuracy of alleged facts, defendant is not liable to the plaintiff for. the damages it claims *993 to have sustained as a result of defendant’s alleged breach of contract.
Since 1969, this significant commercial controversy has been percolating through the courts, interrupted by intermittent motions. The attorneys have been flailing at each other with such basic concepts of the law of contracts as ‘1 lack of consideration ” and ‘ ‘ lack of mutuality ’ ’. But these first-year law school principles are artificial constructs which were invented by the great common-law Judges to insure that the parties had actually made a firm bargain. In this case, these ideas conceal rather than reveal' the essential questions in controversy. Did the parties herein make a firm commitment with each other? To what did each of the parties obligate itself? When analyzed in these terms, the problems of the case are not difficult to resolve.
Air France’s only legal obligation under the alleged agreement was to act as a transfer agent of funds for Marino Bondi. Plaintiff’s letter of February 7, 1968, in discussing its letter of February 1, specifically states the plaintiff’s understanding that Air France was not the buyer under the agreement but was ‘ ‘ merely acting as transmittal agents of funds for Marino Bondi ”. Additionally, Air France’s letter response of February 16, 1968, reflects its understanding that its only responsibility was as a transmittal agent for Marino Bondi’s funds. That Air France letter specifically set forth in section 6 the extent of Air France’s responsibility, as follows:
“ 6. Air France Responsibility
" Inasmuch as the payment of the meat will be made by Air France, it must however be understood and agreed that Air France will not assume any liability for payments in case M amisto Borroi fails to deposit with Air France the necessary funds as hereinabove provided.
‘ ‘ At the same time Air France will not be liable in any contingencies resulting between the shipper and the consignee, except as hereinabove indicated. ’ ’
Consequently, there was no question at the time the alleged agreement was entered into that the only obligation that could have been legally imposed upon Air France under the agreement was to act as a transmittal agent for Marino Bondi’s funds. Plaintiff cannot now argue that Air France is liable under the alleged agreement for the breach of an obligation which that agreement did not legally impose. Any obligation of Air France to avoid wrongful acts or omissions in transporting the trial shipment to France did not arise under the alleged agreement.
*994 It is quite probable that Air France would never have agreed to act as a transmittal agent for Bondi’s funds and never would have transported the trial meat shipment had there been any suggestion or intimation that the plaintiff would seek to hold Air France liable for its total lost profits if the trial shipment was improperly handled by Air France. In this context, the language of the often-cited decision in Globe Refining Co. v. Landa Cotton Oil Co. (190 U. S. 540, 544) is apposite:
“ We have to consider therefore what the plaintiff would have been entitled to recover * * * and that depends on what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.
“ This point of view is taken by implication in the rule that ‘ a person can only be held to be responsible for such consequences as may be reasonably supposed to be in the contemplation of the parties at the time of making the contract. ’ (Grébert-Borgnis v. Nugent, 15 Q.B.D. 85, 92; Horne v. Midland Ry. Co., L.R. 7 C.P. 583, 591; Hadley v. Baxendale, 9 Exch. 341, 354; Western Union Telegraph Co. v. Hall, 124 U.S. 444, 456; Howard v. Stillwell & Bierce Manufacturing Co., 139 U.S. 199, 206; Primrose v. Western Union Telegraph Co., 154 U.S. 1, 32. The suggestion thrown out by Bramwell, B., in Gee v. Lancashire & Yorkshire Ry. Co., 6 H. & N. 211, 218, that perhaps notice after the contract was made and before breach would be enough, is not accepted by the later decisions. See further Hydraulic Engineering Co. v. McHaffie, 4 Q.B.D. 670, 674, 676. The consequences must be contemplated at the time of the making of th_e contract.” (Accord, Armstrong Rubber Co. v. Griffith, 43 F. 2d 689.)
Even if it is found that the plaintiff’s letter “ offer ” of February 1 or its letter of February 7 did put Air France on notice that plaintiff would hold Air France responsible for its lost profits, Air France’s letter of February 16 certainly did not assent to such provisions or to any resulting liability of that nature. Air France’s understanding of the scope of its responsibility and liability pursuant to the provisions of the alleged agreement and the arrangements and relationships described therein were specifically set forth in section 6 of its letter of February 16,1968.
It seems noteworthy that a portion of section 6 reads as follows : '‘ Conditions of carriage in regards to this traffic shall be those as convened on the transportation contract shown on the air waybill.” Thes^ conditions included a limitation of Air *995 France’s liability. Having thus been incorporated in the alleged agreement by express reference in Air France’s February 16 letter, these conditions of carriage, including the limitation of liability, were applicable to all shipments proposed in the plaintiff’s letter of February 1, 1968, and not just to the shipment eventually transported under an air waybill on which these conditions appear. Moreover, this .reference makes it certain that Air France did not contemplate that the alleged agreement would render Air France liable for the damages sought herein.
The transportation of the plaintiff’s trial shipment was international transportation by air under a contract of transportation setting forth, inter alia, the place of departure as John F. Kennedy International Airport, New York, and the place of destination as Toulouse, France. This transportation constituted international air transportation within, subject to, and governed by the Convention for the Unification of Certain Rules Relating to International Transportation by Air, signed at Warsaw, Poland, on October 12, 1929, and commonly known as the “ Warsaw Convention”. This convention was adhered to by the Republic of France on November 15,1932, and by the United States of America by proclamation of the President on October 29, 1934, with the advice and consent of the Senate (49 U. S. Stat. 3000 et seq., T,S. 876).
Article 22 of the Warsaw Convention limits Air France’s liability as follows:
“ (2) In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that the sum is greater than the actual value to the consignor at delivery. * * *
“ (4) the sums mentioned above shall be deemed to refer to the French franc consisting of 65% millograms of gold at the standard of fineness of nine hundred thousandths. These sums may be converted into any national currency in round figures.”
(Prior to the devaluation of May 8, 1972, the above-quoted limitation amounted to $7.52 per lb. [$16.58 per kilogram]. See 37 Fed. Reg. 11384, 11385 [June 7, 1972].)
Article 26 of the Warsaw Convention limits the time for the plaintiff to give written notice of its claims against defendant. This article provides, in pertinent part, as follows:
*996 “ (2) In case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within 3 days from the date of receipt in the case of baggage and 7 days from the date of receipt in the case of goods. In case of delay the complaint must be made at the latest within 14 days from the date on which the baggage or goods have been placed at his disposal.
“ (3) Every complaint must be made in writing upon the document of transportation or by separate notice in writing dispatched within the times aforesaid.
“ (4) Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.”
It is uncontroverted that the plaintiff did not submit any written claim to Air France for the damages alleged herein within the time period set forth in the Warsaw Convention. (In fact, though it is not relevant to the Warsaw Convention requirements, the plaintiff also did not submit any oral claim to Air France for the damages alleged herein within the time period set forth in the Warsaw Convention.)
It is well settled that, in situations such as the present one, the above-quoted provisions of the Warsaw Convention are controlling and must be enforced by the courts. (See, e.g., Overseas Fruit Corp. v. Varig Airlines, 11 Avi. 17,332 [Sup. Ct., N. Y. County, 1969]; Greek Fashions v. Olympic Airways, S.A., Index No. 11818/70 [Sup. Ct., N. Y. County, Dec. 28, 1971]; Brentwood Fabrics Corp. v. KLM Royal Dutch Airlines, Index No. 24036/1970 [Civ. Ct., N. Y. County, June 25, 1970]; Lady Marlene Brassiere Corp. v. Irish Int. Airlines, Index No. 104309/ 1970 [Civ. Ct., N. Y. County, Nov. 9, 1971].)
The contract of carriage between a shipper and an airline is governed by the provisions of the Federal Aviation Act and not by the common law. Congress has, of course, pre-empted the field of aviation pursuant to its plenary interstate commerce powers, and consequently, this act and the tariffs filed in conformance and compliance therewith are the exclusive sources of regulations and interpretations of the contract of carriage. The common law has no application in this respect. Moreover, Congress has invested the Civil Aeronautics Board with “ primary jurisdiction ” over all domestic and foreign carriers of passengers and cargo by air to or from the United States.
Air France operates subject to the provisions of the Federal Aviation Act of 1958 (U. S. Code, tit. 49 § 1301 et seq.), which recodified the prior Civil Aeronautics Act of 1938 as amended *997 (U. S. Code, tit. 49, § 301 et seq.). Pursuant to subdivision (a) of section 403 thereof (U. S. Code, tit. 49, § 1373, subd. [a]), Air France was required to and did file tariffs with the Civil Aeronautics Board containing its rules and regulations relating to the transportation of passengers and cargo.
Questions of the reasonableness of rates, regulations, and practices in air transportation regulated by the Federal G-overnment are left to the administrative agency governing the industry, in this case the Civil Aeronautics Board. (Texas and Pacific Ry. v. Abilene Cotton Oil Co., 204 U. S. 426; Vogelsang v. Delta Air Lines, 302 F. 2d 709, cert. den. 371 U. S. 826; Herman v. Northwest Airlines, 222 F. 2d 326, cert, den., 350 U. S. 843; Lichten v. Eastern Airlines, 189 F. 2d 939; Civil Aeronautics Bd. v. Modern Air Transp., 179 F. 2d 622.) Section 1002 of the Federal Aviation Act (U. S. Code, tit. 49, § 1482) provides a procedure for investigation of and challenges to the provisions of any airline tariff or other document approved by the board.
A primary purpose for the Federal Aviation Act’s investing the Civil Aeronautics Board with power to review, approve, and accept a tariff containing regulations and limitations regarding air transportation is to insure uniformity of rates and services to all persons using the facilities of air carriers. Congress gave the responsibility for achieving this result to a single agency, the Civil Aeronautics Board, rather than to the numerous courts under diverse laws. (Lichten v. Eastern Air Lines, supra, p. 941.) The board, having been invested with power to approve and accept a tariff, has ‘ ‘ primary jurisdiction ” to determine the reasonableness thereof. A claim that a tariff is unreasonable must first be passed upon by the board. (United States v. Western Pacific B. B. Co., 352 U. S. 59; Blair v. Delta Air Lines, 344 F. Supp. 360, 366-367.) Of course, a party claiming that a particular provision of a tariff is unreasonable must first exhaust his administrative remedies before taking recourse to the courts. (Lichten v. Eastern Air Lines, supra, p. 941; Vogelsang v. Delta Air Lines, supra, p. 713; Tishman & Lipp v. Delta Air Lines, 275 F. Supp. 471, 475, affd. 413 F. 2d 1401; Eisman v. Pan American World Air Lines, 336 F. Supp. 543.) Plaintiff has not sought preliminary administrative review with respect to the validity of the Air France tariffs applicable herein.
The rule is well established that filed tariffs constitute the contract of carriage between the parties and govern the rights and liabilities arising therefrom. (Blair v. Delta Air Lines, *998 supra, pp. 360, 365; Tishman & Lipp v. Delta Air Lines, supra, p. 481; Mao v. Eastern Air Lines, 310 F. Supp. 844, 846; Progress Jewelry Co. v. Northwest Orient Airlines, 300 F. Supp. 335; Berkman v. Trans World Airlines, 209 F. Supp. 851; Bruce Glen, Inc. v. Emery Air Frgt. Corp., 24 A D 2d 145, 146; Trinidad and Tobago United Cultural Assn. v. Vista Travel Serv., 53 Misc 2d 1015.)
The plaintiff had constructive notice of the regulations and limitations in Air France’s tariff. Such constructive notice is given hy filing the tariff required by the Federal Aviation Act. In Turoff v. Eastern Airlines (129 F. Supp. 319, 321), the law was summarized as follows: “ With .respect to matters authorized or required to be included in the tariff, the tariff regulations do as a matter of law control the carrier and passenger, and this without any actual notice or knowledge other than the constructive notice rendered by the filing of the tariffs as required.” (See, e.g., Tannenbaum v. National Airlines, 13 Misc 2d 450; International Teaching Machs. Corp. v. Mohawk Airlines, 9; Avi. 18,299 [Sup. Ct., N. Y. County, 1966]; Fishman v. United Airlines, Inc., 8 Avi. 17,624 [Civ. Ct., N. Y. County, 1963]; Mao v. Eastern Air Lines, 310 F. Supp. 844, 846.)
Air France’s Cargo Rules Tariff No. CR-2, C.A.B. No. 17, was filed pursuant to the Federal Aviation Act with the Civil Aeronautics Board and was in effect on March 12,1968. Rule 2, " Applicability of Tariff ’ ’ provided, in pertinent part, as follows :
“ (A) General: This tariff shall apply to carriage of cargo, including all services incidental thereto, performed by carrier * # #>
“ (D) Effective Rules: All carriage of cargo governed by this tariff shall be subject to the rules, regulations and conditions of carriage in effect on the date that the transportation begins. ’ ’
The conditions of carriage in effect on March 12, 1968 that are made binding on each contract of carriage are those that are set forth on each air waybill. As pointed out above, since they are made binding by the tariffs, the plaintiff had constructive notice of these conditions as a matter of law. (Also, these conditions were specifically referred to by Air France in its letter of February 16, 1968.)
These conditions contain two provisions, a limit of liability and a time limit for claims, that dispose of the .plaintiff’s action herein. Both of these provisions are set forth hereinbelow. This may be the proper place, however, to point out that these limits apply to all claims, i.e., the plaintiff cannot escape these limita *999 tions by suggesting that its claim does not fall into the category covered hy Air 'France’s tariff. In Bruce Glen, Inc. v. Emery Air Frgt. Corp. (24 A D 2d 145), plaintiff sought consequential damages, including the loss of commissions on sales because of delayed delivery of goods shipped. The court enforced the tariff limitation and declined to award the plaintiff any amount in excess of the declared value for carriage.
In Blair v. Delta Air Lines (344 F. Supp. 360), the plaintiff argued that its claims for punitive damages and for tort damages of mental pain and anguish arising from the handling of his wife’s remains by the carrier did not fall into the category covered by the defendant airline’s tariff. The court found that the defendant’s tariff provisions covered all aspects of the case and limited the defendant’s total liability to the plaintiff, no matter what the cause of action. This conclusion was based on limitations of liability similar to those in Air France’s conditions of carriage.
The most recent decision on this issue is Gellert v. United Airlines (474 F. 2d 77). There, too, .the plaintiff alleged that consequential damages were not limited by tariff limitations of liability similar to those of Air France herein. The court held that the limitation of liability in the tariff rules precluded any recovery for consequential damages for business losses, including loss of profits, in excess of the amount permitted in the limitation of liability.
The Gellert decision was based on the Per Curiam decision of the United States Supreme Court in Southeastern Express Co. v. Pastime Co. (299 U. S. 28). The Supreme Court ruled that tariff limitations of liability app^cd to a suit for damages for the interruption of plaintiff’s business caused by a delay alleged to be due to the carrier’s negligence. Underlying this decision was the principle ‘ ‘ that the carrier is entitled to base rates upon value and that its compensation should bear a reasonable .relation to the risk and responsibility assumed * * * The broad purpose of the federal act is to compel the establishment of reasonable rates and to provide for their uniform application. Special contracts are not permitted to give any advantage to a particular shipper * * * The liability in this instance is thus governed by the provisions of the applicable tariff and no recovery could be had in excess of the amount permitted by its terms.” (pp. 29-30.) (Accord, American Synthetic Rubber Corp. v. Louisville Nashville R.R. Co., 422 F. 2d 462.)
*1000 Therefore, the Air France tariff clearly limits Air France’s liability for the plaintiff’s claims herein and also limited the time permitted for the plaintiff to give written notice of its claim.
The conditions of carriage limit Air France’s liability and limit the' time permitted for plaintiff to give written notice of its claims.
The following statement was set forth on page 3 of Air France’s letter of February 16, 1968: “ Conditions of carriage in regards to this traffic shall be those as convened on the transportation contract shown on the air waybill.”
Section 4 of the conditions of carriage of the standard air waybill reflects the limitations of the Warsaw Convention: “ Except as the Convention or other applicable law may otherwise require: (a) Carrier is not liable to the shipper or to any other person for any damage, delay or loss of whatsoever nature (hereinafter collectively referred to as ‘ damage ’) arising out of or in connection with the carriage of goods, unless such damage is proved to have been caused by the negligence or willful fault of Carrier and there has been no contributory negligence of the shipper, consignee or other claimant, (b) Carrier is not liable for any damage directly or indirectly arising out of the compliance with laws, government regulations, orders or requirements or from any cause beyond carrier’s control ; (e) the charges for carriage having been based upon the value declared by the shipper, it is agreed that any liability shall in no event exceed the shipper’s declared value for carriage stated on the fact hereof, and in the absence of such declaration by shipper, liability of Carrier shall not exceed 250 such French gold francs, or their equivalent per kilogram of goods destroyed, lost, damaged or delayed; all claims shall be subject to proof of value ”.
Section 10(a) of the conditions of carriage also reflects the limitation of the Warsaw Convention on the time for the plaintiff to make written claim upon Air France: “(10) (a) No action shall be maintained in the case of damage to goods unless a written notice, sufficiently describing the goods concerned, the approximate date of the damage, and the details of the claim, is presented to an office of Carrier within 7 days from the date of receipt thereof, in the case of delay unless presented within 14 days from the date the goods are placed at the disposal of the person entitled to delivery, and in the case of loss (including non-delivery) unless presented within 120 days from the date of issue of the air waybill.”
*1001 The above-quoted limitations are conditions of carriage specifically incorporated in the alleged agreement by express reference in Air France’s letter of February 16, 1968, as well as in the applicable tariff. As such, these conditions were applicable to all shipments proposed in the plaintiff’s letter offer of February 1, 1968, and not just to the shipment eventually transported under the air waybill on which these conditions appear. In any event, these limitations appear in the conditions of contract on air waybill No. 057-2-946-464, which was issued to cover the trial shipment, and, these limitations apply to all claims for damages, consequential or otherwise, which arise in any way out of the trial shipment.
A relatively minor controversy relates to the claim by Air France that plaintiff Crosby is obliged by law to pay for the ticket of its employee, a passenger who accompanied the trial shipment.
On or about the 11th day of March, 1968, at the request of the plaintiff, Air France issued an airline ticket to David Heckelaar, an employee of the plaintiff, covering round-trip transportation between New York and Toulouse, France, via Paris. This employee used the round-trip ticket to conduct plaintiff’s business in connection with the trial shipment of meat.
Air France contends that the plaintiff agreed to pay the sum of $460.20 for the ticket within a reasonable time after its issue, but no part of this sum was ever paid by the plaintiff to the defendant, although due demand was made.
In any event, the plaintiff is obligated by law to pay Air France $460.20. ' Subdivision (b) of section 403 of the Federal Aviation Act of 1958 (U. S. Code, tit. 49, § 1373, subd. [b]) provides, in pertinent part, as follows: “ No air carrier or foreign air carrier shall charge or demand or collect or receive * * * less or different compensation for air transportation, or for any service in connection therewith than the rates, fares, and charges specified in its currently effective tariffs; and no air carrier or foreign air carrier shall, in any manner or by any device, directly or indirectly, or through any agent or broker, or otherwise, refund or remit any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities, with respect to matters required by the Board to be specified in such tariffs, except those specified therein.”
In United States v. Associated Air Transp. (275 F. 2d 827), the carrier had brought an action against the Government to recover for air transportation furnished, but the Government *1002 claimed that the carrier, through a bid, had agreed upon a rate less than the rate charged under the applicable tariff. The court’s discussion of this issue is appropriate here (pp. 833-834):
“ The tariffs are both conclusive and exclusive; they may not be added to through reference to outside contracts or agreements or understandings or promises.
“As a natural corollary to such a dynamic policy prohibiting the possibility or temptation to preferential discrimination * * * is the equally uncontradicted legal proposition that estoppel cannot be invoked against a common carrier to avoid a tariff provision. ‘ Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay.’ Kansas' City Southern By. Co. v. Carl, 1913, 227 U.S. 639, 653, 33 S. Ct. 391, 395, 57 L. Ed. 683, 688. It is clear that no ‘ act or omission of the carrier ’ can ‘ estop or preclude it from enforcing payment of the full amount ’ of the tariff charges, Louisville & N.B. Co. v. Central Iron & Coal Co., 1924, 265 U.S. 59, 65, 44 'S. Ct. 441, 442, 68 L. Ed. 900, 902. And, ‘ equitable considerations may not serve to justify failure of carrier to collect, or retention by shipper of, any part of lawful tariff charges ’, Baldwin v. Scott •County Milling Co., 1939, 307 U.S. 478, 485, 59 S. Ct. 943, 948, 83 L. Ed. 1409, 1414. Pittsburgh, C., C & St. L. By. Co. v. Fink, 1919, 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151.” Accord, Trinidad and Tobago United Cultural Assn. v. Vista Travel Serv., 53 Misc 2d 1015. See Bartlett-Collins Co. v. Surinam Nav. Co., 381 F. 2d 546, 549.)
In items 23 and 24 of its bill of particulars plaintiff’s only excuse for not paying for the ticket is the allegation that defendant Air France had agreed that no charge would be made for the transportation of plaintiff’s employee. As the above discussion indicates, even if that unsubstantiated contention were correct, the law does not excuse it from paying Air France the cost of the ticket.
On defendant’s motion for summary judgment, the complaint should be dismissed, with costs, and judgment directed in favor of defendant on its counterclaim, with interest and. costs.