31 F.Supp.2d 692 (1998)
Thomas L. SAEY, et al., Plaintiffs,
v.
XEROX CORPORATION, Defendant.
No. 4:98CV00030-SNL.
United States District Court, E.D. Missouri, Eastern Division.
December 11, 1998.
*693 *694 Todd N. Hendrickson, Richard R. Lozano, Lozano and Hendrickson, Clayton, MO, for Thomas L. Saey, Denise Saey.
Louis F. Bonacorsi, Bryan Cave L.L.P., St. Louis, MO, for Xerox Corporation.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court on Defendant Xerox Corporation's Motion for Summary Judgment (# 23). The partial summary judgment motion was originally filed as Xerox Corporation's Motion to Dismiss Plaintiffs' Second Amended Complaint (# 15) which sought dismissal of Counts III, IV, V, VIII, IX, X and XI of Plaintiffs' Second Amended Petition. Defendant also sought dismissal of plaintiffs' damage claims in Counts I, II, III, VI, VII and VIII. Because defendant submitted documents which went beyond the pleadings with its memorandum supporting that motion, the Court converted the motion to dismiss into this motion for summary judgment. The Court allowed the parties thirty days to file supplemental briefing *695 and exhibits. Defendant responded with a supplemental brief, but plaintiffs never responded.

Background
This diversity action arose out of the termination of two agency agreements between plaintiffs and defendant. Plaintiffs are individuals residing in St. Louis County, Missouri. Defendant is a foreign corporation incorporated under the laws of the State of New York with its principal place of business in Rochester, New York, and registered to do business in the State of Missouri.
Defendant is in the business of providing office equipment through, in part, authorized agencies. Plaintiffs and defendant entered into two Agency Agreements wherein plaintiffs were to solicit orders on defendant's behalf in selected regions of Southeastern Missouri and St. Louis County. Plaintiffs allege that they were in fact resellers of defendant's products. However, the Agency Agreements, which were submitted by defendant and which plaintiff agreed were true copies of the agreements in issue, explicitly state otherwise. The Agreements each state that "Agent is not a reseller." Defense Exhibit E ¶ 1.5; Defense Exhibit F ¶ 1.5. The Agency Agreements also specifically forbade plaintiffs from referring to themselves as Xerox dealers or resellers. All orders plaintiffs obtained from defendant's customers were subject to acceptance by defendant. Plaintiffs had no authority to accept orders on defendant's behalf.
The Agency Agreements provided that defendant would set annual sales quotas for plaintiffs. Those sales quotas were to reflect defendant's reasonable estimate of the business potential of each of the Territories. The Agency Agreements further provided that defendant would monitor plaintiffs' performance quarterly. The first Agency Agreement stated that if plaintiffs' performance was deficient for the year to date as measured at the end of a quarter, plaintiffs would have until the end of the next quarter to correct the deficiency. If plaintiffs' performance were still deficient at the end of that quarter, defendant could terminate the agreement without further notice to plaintiffs. Defense Exhibit E ¶ 2.2.1. The second Agency Agreement also provided that if plaintiffs' year-to-date performance remained deficient for two consecutive quarters that defendant could terminate the agency without further notice to plaintiffs. Defense Exhibit F ¶ 2.2.1.
Plaintiffs allege that before they signed the Agency Agreements, defendant assured them that it would not terminate the agency under the sales quota provisions. Plaintiffs allege that in reliance on these assurances, they signed the agreements in spite of the sales quota termination clauses in the contracts. However, the express language of both agreements, subscribed by plaintiffs, states that the provisions in the written agreements "supersed[e] all previous agreements, proposals, representations, or understandings, whether oral or written." Defense Exhibit E ¶ 5.5; Defense Exhibit F ¶ 6.8. Those agreements also include limitation of liability clauses, whereby plaintiffs agreed that "neither party [would] have any liability to the other for lost profits or other incidental or consequential damages for any claim arising under or concerning [these] Agreement[s]...." Defense Exhibit E ¶ 5.2; Defense Exhibit F ¶ 6.3. Finally, the agreements both provided that the law of New York would govern any dispute arising out of or relating to the Agreements. Defense Exhibit E ¶ 5.7; Defense Exhibit F ¶ 6.11.
Plaintiff Denise Saey signed the Southeastern Missouri Agreement on October 24, 1989. Plaintiff Thomas Saey signed the St. Louis County Agreement on January 28, 1993. Defendant ultimately terminated both agreements under the sales quota provisions. Plaintiffs do not dispute that they failed to meet defendant's sales quotas. Rather, they argue that defendant failed to set reasonable quotas. Plaintiffs allege this failure constituted breach of contract, breach of fiduciary duty, and prima facie tort. Plaintiffs allege defendant's termination of the Agency Agreements constituted violation of the Missouri Franchise Termination Notification Act.
Plaintiffs also allege that the Agency Agreements required defendant to provide plaintiffs with certain information in order that they might more successfully market *696 defendant's products to its customers. Plaintiffs allege that between September and November, 1996, defendant failed to provide that information, thereby breaching its contract with them. Plaintiffs allege that defendant's breach of the Agency Agreements caused the plaintiffs not to be able to sell defendant's products to Maritz Behavioral, Incorporated, during the period that defendant was in breach. Plaintiffs allege that defendant's breach constituted a tortious interference with their business relation with Maritz Behavioral, Incorporated.

Standard for Summary Judgment
Courts have repeatedly recognized that summary judgment is a harsh remedy which courts should only grant when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mutual Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). The standards for determining whether to grant summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all the information before the court shows that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden of proof is on the moving party. City of Mt. Pleasant, Iowa v. Assoc. Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir.1988). Once the moving party has discharged the burden, however, the non-moving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party then bears the burden of setting forth specific facts to show that there is evidence in its favor for a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
In passing on a motion for summary judgment the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that can logically be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). Moreover, in order to grant summary judgment, the court is required to resolve all conflicts of evidence in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). The Court will now consider the merits of defendant's motion.

Discussion

I. CHOICE OF LAW
The question of choice of law is difficult in this case. "Federal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship." Whirlpool Corp. v. Ritter, 929 F.2d 1318, 1320 (8th Cir.1991). Missouri courts follow the Restatement (Second) of Conflicts in contract actions. See Educational Employees Credit Union v. Mut. Guar. Corp., 50 F.3d 1432, 1437 (8th Cir.1995). This Court believes that Restatement (Second) of Conflicts § 187 applies in this case. The first step of any § 187 analysis is to determine whether the issue for determination is one which the parties "could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflicts § 187(1). If so, then the Court should follow the law of the state chosen by the parties to determine the contractual rights and duties at issue.
The contract in this case provided a general forum selection clause choosing the law of New York. This Court should give that clause effect if the issues are of the kind to which the parties could have explicitly agreed to choice of law. In determining whether the issues involved in this case are of the kind to which the parties could have explicitly agreed, the Court will look to the Commentary to the Restatement (Second) of Conflicts. Comment (d) to Section 187 states that capacity, formalities and substantial validity are examples of issues which cannot be determined by explicit agreement. Comment (c) suggests that "whether the parties could have determined a particular issue by explicit agreement directed to that issue is a question to be determined by the local law of *697 the state selected by application of the rule of § 188."
Section 188 is a "most significant relationship" test which looks at the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the domicil, residence, nationality, place of incorporation and place of business of the parties. At this point, the record lacks information regarding several of these key issues, including the place of negotiation. Upon converting the motion to dismiss into this motion for summary judgment, the Court invited additional evidence from the parties. However, other than the agreements themselves, neither party has provided any exhibits tending to illuminate these issues.
Assuming the Court could determine definitively the outcome of a Section 188 analysis at this time, the Court is uncertain what the proper analysis under Section 187(2) would be. In 1991, the Eighth Circuit decided Electrical and Magneto Service Company (EMS) v. AMBAC International Corporation, 941 F.2d 660 (8th Cir.1991). In that case, the Eighth Circuit applied an abbreviated version of Restatement (Second) § 187, on the theory that Missouri courts applied the same abbreviated version. The EMS Court held that in deciding whether to enforce a contractual choice of law provision, the trial court should simply determine whether to do so would violate a fundamental policy of the forum state. See EMS, 941 F.2d at 662. In the case at hand, there is an argument that enforcement of the choice of law clause would violate Missouri's fundamental policy of protecting frachisees from improper termination by franchisors.
A year after EMS, the same panel of Eighth Circuit judges addressed Section 187 again in Baxter International, Inc. v. Morris, 976 F.2d 1189 (1992). In the meantime, the Missouri Court of Appeals had announced its opinion in Ernst v. Ford Motor Company, 813 S.W.2d 910 (Mo.Ct.App.1991). In light of the Ernst decision, the Eighth Circuit abrogated its opinion in EMS, and announced that Missouri law demanded the full analysis prescribed in Restatement (Second) of Conflicts § 187(2)(b). Under Baxter, even if the parties could not have specifically agreed to choice of law as to the issue at hand, the court should give effect to the choice unless the following three conditions are met: (1) the forum state has a materially greater interest in the determination of the particular interest than the chosen state; (2) the law of the forum state would be the applicable law under Restatement (Second) of Conflicts § 188 in the absence of an effective choice of law; and (3) application of the law of the chosen state would be contrary to a fundamental public policy of the forum state. Restatement (Second) of Conflicts § 187(2)(b).
However, since the Baxter decision, the Eighth Circuit has again applied Section 187. That time, the Court of Appeals applied the EMS analysis without citing Baxter or conducting the Section 188 analysis to determine which state's law would apply in the absence of a valid choice of law clause and which state has a materially greater interest. Educational Employees Credit Union, 50 F.3d at 1437 (applying Missouri law because Tennessee law chosen by the parties would violate fundamental Missouri policy). See also Barker v. Golf U.S.A., Inc., 154 F.3d 788, 794 (8th Cir.1998) (Heaney, J., dissenting). Due to the uncertainty of the choice of law question and the lack of complete facts in the record, this Court finds itself in a quandary.
The question of characterization of the issues in this case amplifies the problem. Although the core facts arise from the parties' contractual relationship, plaintiffs bring several of their claims as torts. The choice-of-law clause involved here purports to cover all claims arising from the agency relationship. This appears broad enough to cover business torts as well as contract claims. However, the commentary to the Restatement (Second) of Conflicts § 145 suggests that the policy considerations in determining what law to apply in tort actions differ somewhat from those to consider in contract actions. This is primarily because it is fairly easy to ascertain the parties' ex-ante expectations in a contract action, while tort actions necessarily involve less foreseeability. In this case however, unlike a personal injury or other traditional tort case, the same facts which allegedly *698 constituted breach of the contract form the core of the alleged torts. Therefore, presumably, those incidents were more foreseeable than traditional torts, and the parties' ex-ante choice of law should be given more weight. The Court invited the parties to submit supplemental briefing and evidence on the characterization of issues, but all parties declined.
In light of the uncertainty of the current interpretation of Restatement (Second) of Conflicts § 187, the state of the record, and the uncertainty of the characterization of issues in this case, the Court's simplest solution was to analyze all of the issues under the laws of both New York and Missouri. The laws of those two states differed very little for the most part. Where they differed, the Court concluded that application of the facts in this case to the two different standards would bear the same result. For those reasons, the Court has resolved all of the issues currently before it, and will reserve final judgment on which state's law should apply to the remaining issues for a later ruling.

II. PROMISSORY ESTOPPEL
As to Plaintiffs' two counts of promissory estoppel, both must be dismissed regardless of choice of law. Under Missouri law, "the remedy of promissory estoppel is not available when an unambiguous contract exists that covers the issue for which damages are sought." Hamra v. Magna Group, Inc., 956 S.W.2d 934, 939 (Mo.Ct.App.1997) (citing Hill v. McDonald's Corp., 709 S.W.2d 169, 171 (Mo.Ct.App.1986)). Additionally, "[p]romissory estoppel cannot be used to create rights not included within the contract." Hamra, 956 S.W.2d at 939. Similarly, under New York law, when a contract exists containing express language contrary to an alleged, prior promise, a party cannot make out the elements of clear and unambiguous promise or reasonable reliance necessary to prove a promissory estoppel claim. General Electric Co. v. Compagnie Euralair, 945 F.Supp. 527, 536 (S.D.N.Y.1996). See also In re Gulf Oil/Cities Serv. Tender Offer Litigation, 725 F.Supp. 712, 735 (S.D.N.Y.1989). A "specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon [the] contrary oral representations." Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 602, 157 N.E.2d 597 (N.Y.1959).
In this case, Counts III and VIII both allege that defendant promised plaintiffs that it would not terminate the Agency Agreements solely for plaintiffs' failure to fulfill the annual sales quotas. Both counts allege that plaintiffs relied on those promises in agreeing to enter the agency relationships. However, both Agency Agreements contain explicit provisions dealing with the sales quotas. Those sub-sections clearly state that if the agents continue in deficient performance regarding the sales quotas, the agreements "may be terminated by Xerox without further notice" to the agents. Defense Exhibit E ¶ 2.2.1; Defense Exhibit F ¶ 2.2.1. The St. Louis Agreement contains a reiteration of this provision at paragraph 4.4(a) which states that "Xerox shall have the right to immediately terminate Agent if Agent ... fails to achieve its quota...." Both agreements also include specific integration clauses which state that the agreements supersede "all previous ... proposals, representations, or understandings, whether oral or written." Defense Exhibit E ¶ 5.5; Defense Exhibit F ¶ 6.8.
In light of the specific contractual provisions in this case, the Court finds that Plaintiffs cannot state claims of promissory estoppel based on allegations of inconsistent oral promises predating the existence of the unambiguous contracts at issue in this case. As a matter of law, Plaintiffs cannot claim that those promises reasonably induced them to enter these agreements. Accordingly, defendant's motion for summary judgment of dismissal on Counts III and VIII will be granted. Those counts will be dismissed.

III. BREACH OF FIDUCIARY DUTY
Defendant argues that plaintiffs' claims for breach of fiduciary duty in Counts IV and IX must fail because as a matter of either New York or Missouri law, a franchisee-franchisor relationship does not give rise to a fiduciary duty. Defendant's argument overstates the law.
*699 New York courts have indeed rejected the proposition that the franchisor-franchisee relationship automatically gives rise to a fiduciary duty. See Bevilacque v. Ford Motor Co., 125 A.D.2d 516, 519, 509 N.Y.S.2d 595, 599 (N.Y.App.Div.1986) (citing Mobil Oil Corp. v. Rubenfeld, 48 A.D.2d 428, 370 N.Y.S.2d 943 (1975)). See also Texaco Inc. v. A.A. Gold, Inc., 78 Misc.2d 1050, 357 N.Y.S.2d 951, 956 (N.Y.Sup.Ct.1974). Missouri courts have similarly rejected such a per se rule. See Chmieleski v. City Prod. Corp., 660 S.W.2d 275, 294 (Mo.Ct.App.1983). See also Smith v. Goodyear Tire & Rubber Co., 856 F.Supp. 1347, 1353 (W.D.Mo.1994). This represents the majority view. See O'Neal v. Burger Chef Sys. Inc., 860 F.2d 1341, 1349 (6th Cir.1988).
However, defendant goes farther than simply saying that a franchise relationship in and of itself does not give rise to a fiduciary duty. Defendant argues that, as a matter of law, no fiduciary relationship may ever exist between a franchisor and franchisee. The Court rejects this argument.
The existence of a fiduciary relationship can only be determined after a thorough examination of the facts. In Missouri, in order to prove the existence of a fiduciary duty, the claimant must establish five elements: (1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party. Chmieleski, 660 S.W.2d at 294. Under New York law, "a fiduciary relationship exists from the assumption of control and responsibility ... and is founded upon trust reposed by one party in the integrity and fidelity of another...." Beneficial Commercial Corp. v. Murray Glick Datsun, Inc., 601 F.Supp. 770, 772 (S.D.N.Y.1985) (citations omitted) (holding that under the facts of the case the parties were at arm's length and thus not in a fiduciary relationship).
While it may be particularly difficult for a business-person plaintiff to establish these elements, this Court cannot say it is impossible as a matter of law. Defendant in this case has introduced nothing into the record to refute plaintiffs' allegations that defendant owed them a fiduciary duty other than the Agency Agreements. The Court cannot determine from the Agreements that a fiduciary relationship did not exist between the parties as a matter of law. Nor has defendant placed any extrinsic evidence into the record that suggests to the Court that defendant is entitled to judgment as a matter of law. Therefore, defendant has not successfully shifted the burden of production to the plaintiffs on this motion for summary judgment. Accordingly, as to Counts IV and IX of Plaintiffs' complaint, defendant's motion for summary judgment will be denied.

IV. PRIMA FACIE TORT
Counts V and X of Plaintiffs' complaint allege that by setting unreasonable sales quotas, defendant committed prima facie torts. Defendant argues that where a right of action for breach of contract lies, a plaintiff cannot recover on a prima facie tort theory. Plaintiffs respond that they have alleged the breach of duties independent of the contract, and that therefore an issue of fact exists as to whether a prima facie tort occurred.
The Court rejects Plaintiffs' argument. Under New York law, there are four elements to a prima facie business tort claim: (1) an intentional infliction of harm; (2) without excuse or justification and motivated solely by malice; (3) resulting in special damages; (4) by an act that would otherwise be lawful. U.S., for Use and Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 161 (2nd Cir. 1996). Acts "remediable within the traditional or `classical' tort categories are not cognizable under a prima facie tort theory" nor *700 are those "clearly cognizable under the theory of breach of contract...." Effective Communications West, Inc. v. Board of Coop. Educational Servs., 57 A.D.2d 485, 490-91, 395 N.Y.S.2d 296, 299 (N.Y.App.Div.1977). Similarly, under Missouri law, in order to establish a prima facie tort, the plaintiff must prove: (1) an intentional lawful act by the defendant, (2) defendant's intent to injure the plaintiff, (3) injury to the plaintiff, and (4) an absence of, or insufficient justification for defendant's act. Woolsey v. Bank of Versailles, 951 S.W.2d 662, 668 (Mo.Ct.App. 1997).
The Court does not believe that the plaintiffs can prove these elements under the facts alleged. The only duty independent of the contract that plaintiffs have alleged anywhere in their complaint is a fiduciary duty. If plaintiffs prove that such a duty existed, and that they were injured by defendant's breach of that duty, then the plaintiffs cannot prove that defendant's intentional act was "lawful." On the other hand, if plaintiffs fail to establish the existence of a fiduciary duty, then the only remaining duty alleged is contractual. If plaintiffs allege no action by defendant which would be an independent tort in the absence of a contract, they cannot make out a claim for prima facie tort. See Rolscreen Co. v. Pella Prods. of St. Louis, Inc., 64 F.3d 1202, 1212 (8th Cir.1995)
Defendant rightly points out that plaintiffs' complaint repeatedly restates the same factual allegations under the rubrics of different legal theories. Plaintiffs are free to choose applicable causes of action to fit their facts. The Court even invited briefing on characterization, but the parties failed to respond. Therefore, the Court must characterize plaintiffs' claims as best it can. The Court does not believe that, on the facts alleged in plaintiffs' complaint, recovery may be had on theories of breach of fiduciary duty and prima facie tort at the same time or even alternatively. Accordingly, defendant's motion for summary judgment on Counts V and X will be granted. Those counts will be dismissed.

V. TORTIOUS INTERFERENCE WITH A BUSINESS RELATION
Count XI claims that defendant committed tortious interference with plaintiffs' business relation. Defendant argues that plaintiffs merely acted as its agents, and therefore, the business relation plaintiffs' claim was breached actually existed between defendant and a third-party. Defendant argues that plaintiffs cannot make a claim for defendant's alleged interference with its own business relation.
Under New York law, a claim for tortious interference with prospective economic advantage requires a showing that the defendant interfered with business relations existing between the plaintiff and a third party, either with the sole purpose of harming the plaintiff or by means that are dishonest, unfair or in any other way improper. I.R.V. Merchandising Corp. v. Jay Ward Productions, Inc., 856 F.Supp. 168, 175 (S.D.N.Y.1994) (citing PPX Enter., Inc. v. Audiofidelity Enter., Inc., 818 F.2d 266, 269 (2d Cir.1987)). Missouri law requires that the claimant prove each of the following five elements: (1) a contract or valid business relationship or expectancy; (2) knowledge by the defendant of the contract or relationship; (3) intentional interference by defendant which induces breach of the contract or relationship; (4) absence of defendant's justification; and (5) resulting damages. Slone v. Purina Mills, Inc., 927 S.W.2d 358, 369-70 (Mo.Ct.App.1996) (citing Nazeri v. Mo. Valley College, 860 S.W.2d 303, 316 (Mo. banc 1993)). The 8th Circuit has suggested that Missouri law does not require that the conduct supporting the tortious-interference claim be directed at the third-party. See American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1144 n. 7 (8th Cir.1986). However, Missouri law does not allow a plaintiff to claim a defendant interfered with a contract or relation to which that defendant was a party. See Gill v. Farm Bureau Life Ins. Co., 856 S.W.2d 96, 100 (Mo.Ct.App.1993).
In Count XI, plaintiffs allege that they had an agreement or a contract with defendant of which defendant was aware. Plaintiffs further allege that this agreement required defendant to supply them with certain information which they used in bidding for jobs to supply defendant's goods to thirdparties. *701 Plaintiffs allege that they sought this information in order to bid on a particular job, but that defendant failed or refused to provide them with the information. As a result, plaintiffs allege that they were unable to supply the goods to the third-party customer in that instance.
The Court finds that these allegations cannot form the basis of a claim of tortious interference with a business relation. The Agency Agreements between defendant and plaintiffs clearly state that plaintiffs "shall offer Xerox products only in [their] capacit[ies] as ... Agent[s] for Xerox." Defense Exhibit E ¶ 1.5; Defense Exhibit F ¶ 1.5. Plaintiffs were not resellers of defendant's products. Rather, they sought out customers for defendant. Defendant reserved the right to enter contracts with those customers or not. The Agreements vested plaintiffs with absolutely no authority whatsoever except to act as defendant's agents in procuring customers. It may be true that plaintiffs lost commissions when defendant failed to enter a sales contract with the customer involved in this alleged transaction. However, if that loss constituted a breach, it must have been a breach of the relationship between plaintiffs and defendant. An allegation of that type of breach cannot support a claim of tortious interference. Accordingly, Count XI will be dismissed.

VI. LIMITATION OF DAMAGES
In the last portion of its motion for summary judgment, defendant argues that plaintiffs cannot recover all of the damages they claim in their complaint. Defendant argues that the contract damages plaintiffs seek in Counts I and V are limited by a limitation of liability clause found in both Agency Agreements. Defendants also argue that the damages plaintiffs seek in Counts II and VII are limited by the Missouri Franchise Termination Notification Act to "loss of goodwill, costs of the suit, and any equitable relief that the court deems proper." Mo.Rev.Stat. § 407.410. Defendant finally argues that the measure of damages available to plaintiffs on their promissory estoppel claims is limited to reliance damages rather than benefit of the bargain.
The Court agrees with defendant that both Missouri and New York law allow enforcement of limitation of liability clauses when such clauses are not unconscionable or against public policy. See Scott v. Palermo, 233 A.D.2d 869, 649 N.Y.S.2d 289, 290-91 (N.Y.App.Div.1996); World Enterprises, Inc. v. Midcoast Aviation Servs., Inc., 713 S.W.2d 606, 611 (Mo.Ct.App.1986). Plaintiffs do not argue that the limitation of liability clauses found in these agreements are unconscionable. Rather, plaintiffs argue that insofar as the clauses limit recovery of "lost profits" they are ambiguous, and therefore the meaning of these clauses present questions of fact for the jury.
Defendant incorrectly asserts that "lost commissions are considered consequential damages under both Missouri law and New York law." Defendant's Reply Memorandum in Support of Motion to Dismiss p. 12. Defendant cites two cases in support of this proposition. However, neither O'Conner v. Follman, 747 S.W.2d 216 (Mo.Ct.App.1988), nor Crosby & Company v. Compagnie Nationale Air France, 76 Misc.2d 990, 352 N.Y.S.2d 75 (N.Y.Sup.Ct.1973), hold that lost commissions are considered consequential damages. Rather, O'Conner holds that an unlicensed real estate agent is precluded by law from collecting commissions and therefore cannot collect lost commissions as damages for the intentional tort of fraud. O'Conner, 747 S.W.2d at 222. Crosby deals with damages recoverable under the Federal Aviation Act and the Warsaw Convention not New York common law. Crosby & Company, 76 Misc.2d 990, 352 N.Y.S.2d 75.
Consequential damages are "such damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." Midcoast Aviation Servs., Inc., 713 S.W.2d at 610 (quoting Black's Law Dictionary, 352 (5th ed.1979)). In this case, commissions were the "only compensation payable to" plaintiffs under the Agency Agreements. Defense Exhibit E ¶ 3.4; Defense Exhibit F ¶ 3.4. A breach of the Agreements would directly, not indirectly, result in the loss of commissions. Therefore, any provable loss of commissions *702 in this case would be actual not consequential damages.
The clauses also limit liability for "lost profits or other incidental ... damages." Defense Exhibit E ¶ 5.2; Defense Exhibit F ¶ 6.3. This indicates that the parties intended lost profits to be interpreted as incidental damages. Incidental damages are defined in the Uniform Commercial Code. A seller's incidental damages include "any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with the return or resale of the goods or otherwise resulting from the breach." N.Y.U.C.C.Law ¶ 2-710 (McKinney 1997); Mo.Rev.Stat. § 400.2-710. A buyer's incidental damages "include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." N.Y.U.C.C.Law § 2-715(1); Mo. Rev.Stat. § 400.2-715(1).
In some circumstances, commissions could certainly constitute incidental damages. However, the lost commissions alleged in this case are not profits related to a U.C.C. sale. Rather, the commissions plaintiffs allege they lost are the only compensation available to them under the Agency Agreements. Therefore, if plaintiffs are able to prove breach of contract, they will be allowed to attempt to prove direct contract damages in the form of lost commissions. It may be difficult to prove such unliquidated damages, but that is a question for the trier of fact.
As to defendant's argument that plaintiffs' recovery under the Missouri Franchise Termination Notification Act is limited to "loss of goodwill, costs of the suit, and any equitable relief that the court deems proper," the Court disagrees. The statute states that "[w]hen the franchisee prevails ... he may be awarded a recovery of damages sustained to include loss of goodwill, costs of the suit, and any equitable relief that the court deems proper." Mo.Rev.Stat. § 407.413. The language of the statute, on its face, allows for recovery of "damages sustained." Those damages may include loss of goodwill, costs of the suit, and any other actual damages the franchisee has sustained.
The Missouri Court of Appeals points out that "damages sustained" includes any remedy that was available before passage of the statute. Ridings v. Thoele, Inc., 739 S.W.2d 547, 549 (Mo. banc 1987). According to the Ridings court, punitive damages were not previously available and therefore could not be recovered under the statute. Id. at 549. However, there is no indication that the legislature otherwise intended to limit the actual damages available under the statute.
Accordingly, defendant's motion that Plaintiffs' damages on their statutory claims be limited will be denied. Defendant's motion that plaintiff's damages for breach of contract shall not include lost profits and other consequential or incidental damages will be granted. However, should plaintiffs prove a breach of contract, they will be allowed to attempt to prove lost commissions as damages. As the Court has dismissed Plaintiffs' promissory estoppel claims, defendant's arguments regarding damages for those claims is moot.

Conclusion
This case presents many challenging issues of law reflective of the problems of doing business in a multi-state system. Upon entering the Agency Agreements at the root of this disagreement, the parties agreed that New York law would apply to all disputes arising out of the agreement. However, it is difficult to say as a matter of law that parties can sufficiently foresee the commission of torts so that they might equitably agree exante which law should govern such issues. On the other hand, this Court is not comfortable with the proposition that a party to an agreement may escape the consequences of agreeing simply by recasting his complaint as a tort rather than a breach of contract.
In any event, the outcome of the issues before the Court on this motion is the same under either New York law or Missouri law. Under neither can Plaintiffs recover on a theory of promissory estoppel based on oral assurances allegedly made to them before *703 they signed explicitly contradictory, unambiguous contracts. Nor can Plaintiffs bring prima facie tort actions inconsistent with their claims of breach of contract and breach of fiduciary duty. Finally, neither New York law nor Missouri law will support claims of tortious interference with a business relation where the plaintiff/agent making the claim merely acted on behalf of the defendant/principal in the business relation at issue.
As a final matter, the Court disagrees with defendant's argument that Plaintiffs' damages under the Missouri Franchise Termination Notification Act should be limited. The plain language of the statute provides that a successful plaintiff shall received "damages sustained" as a result of the statutory violation. However, the Court does believe at this time that the limitation of liability clauses in the agreements should be enforced at least insofar as they apply to breach of contract damages. But the phrase "lost profits or other incidental or consequential damages" does not contemplate lost commissions in this context. As Plaintiffs' promissory estoppel claims have been dismissed, determination of the measure of damages available on those counts is unnecessary.

ORDER
For the reasons stated above,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendant's Motion for Summary Judgment is GRANTED as to Counts III and VIII. Counts III and VIII of the Second Amended Complaint are DISMISSED.
IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is DENIED as to Counts IV and IX of the Second Amended Complaint.
IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED as to Counts V and X. Counts V and X of the Second Amended Complaint are DISMISSED.
IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED as to Count XI. Count XI of the Second Amended Complaint is DISMISSED.
IT IS FINALLY ORDERED that Defendant's Motion for Summary Judgment on Plaintiffs' damage claims is GRANTED in part and DENIED in part. Upon the finding of any violation of the Missouri Termination Notification Act, Plaintiffs shall receive compensation for "damages sustained to include loss of goodwill, costs of the suit, and any equitable relief that the court deems proper." Upon any determination of breach of contract, Plaintiffs shall not receive compensation for "lost profits or other incidental or consequential damages...."